UNITED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------x
                                                             :
BRIAN SULLIVAN, individually and on Behalf                   :
Behalf of a class of all persons similarly situated          :        Civil Action No. 17-cv-12123-LTS
and on behalf of the GE RETIREMENT SAVINGS                   :
PLAN,                                                        :        **AMENDED CLASS**
                                                             :        **ACTION COMPLAINT**
                          Plaintiff,                         :
                                                             :        JURY TRIAL DEMANDED
        -against-                                            :
                                                             :
GENERAL ELECTRIC COMPANY, GE ASSET                           :
MANAGEMENT INCORPORATED, DMITRI                              :
STOCKTON, CHERYL BEACOCK, ANAND                              :
HARI, RALPH RICHARD LAYMAN, DAN                              :
TOREY, DANIEL O. COLAO and JOHN DOES                         :
1-25,                                                        :
                                                             :
                          Defendants.                        :
                                                             :
-------------------------------------------------------------x

## INTRODUCTION

1.      Plaintiff Brian Sullivan ("Plaintiff"), is a participant in the GE Retirement Savings

401(k) Plan (the "Plan") during the Class Period (defined below), on behalf of the Plan, himself,

and a class of all other similarly situated Plan participants (the "Participants"), by his

undersigned attorneys, alleges the following based upon personal information as to himself and

upon the investigation of counsel as to other matters.  The investigation of counsel has included a

review of U.S. Securities and Exchange Commission ("SEC") filings by General Electric

Company "GE" or the "Company"), including the Company's proxy statements (Form DEF

14A), annual reports (Form 10-K), quarterly reports (Form 10-Q), current reports (Form 8-K),

registration statements (Form S-8), Forms 5500 filed by the Plan with the U.S. Department of

Labor, annual reports filed on behalf of the Plan (Form 11-K) and other available documents

governing the management, administration and operations of the Plan.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Plaintiff may after discovery and/or disclosure proceedings in this case, seek leave to amend his Complaint to add new parties or claims or to identify the "John Doe Defendants."

## NATURE OF THE ACTION

2.      This is a class action brought pursuant to §§ 409 and 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109 and 1132(a)(2), against the fiduciaries of the Plan for breaches of the ERISA-imposed fiduciary duties.

3.      The Plan is a defined contribution retirement plan sponsored by GE.  The primary purpose of the Plan is to allow Participants to save for retirement.

4.      This case arises out of Defendants' violation of ERISA's fiduciary laws and ERISA's prohibited transactions regulations by offering and failing to follow five investment fund options offered by the Plan, collectively ("GEAM Funds"):

GE Institutional International Equity Fund ("GE Int'l Equity")

GE Institutional Strategic Investment Fund ("GE Strategic")

GE RSP US Equity Fund ("RSP Equity")

GE RSP US Income Fund ("RSP Income")

GE Institutional Small Cap Equity Fund ("GE Small Cap").

The foregoing GEAM Funds were among the 15 investment options (other than "Target Retirement Date Funds") offered in the Plan during the Class Period.  All of the GEAM Funds are managed by Defendant GEAM.  The GEAM Funds are the only non-index funds offered to Plan Participants.  Accordingly, if a Participant wants to invest in actively managed funds, he/she

is forced by GE and the Trustees to invest in GEAM Funds which were (until June 30, 2017) proprietary to GEAM.  The Plan also offers "passive" index funds.  An "index fund" is a type of mutual fund which matches the components of a market index and provides, generally, broad market exposure, low operating expenses and low portfolio turnover.  By contrast, the GEAM Funds were all actively managed funds which, by definition, means there were investment advisers and/or portfolio managers to be paid by Plan Participants from their Plan savings.  The mere act of limiting actively managed funds to GEAM Funds indicates that Defendants put GEAM interests before the interests of the Plan or Plan Participants.  Such conduct is inimical to ERISA's duty of loyalty.

5.      The ERISA fiduciary obligations of retirement plan fiduciaries to the participants and beneficiaries of a plan are "the highest known to the law."  *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *accord Branden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, 602 (8th Cir. 2009).

6.      When seeking investments for a retirement plan, plan fiduciaries are required to: perform with undivided loyalty; act prudently; and defray reasonable plan expenses.  ERISA § 404(a)(1), 29 U.S.C. §d 1104(a)(1).

7.      ERISA also prohibits certain transactions and arrangements that have a high potential for abuse.  Thus, ERISA prohibits a fiduciary from causing a plan to transact with a "party-in-interest," such as the plan sponsor, and prohibits plan fiduciaries from causing plan transactions for the benefit of themselves of others ("Prohibited Transactions").  ERISA § 406(a)-(b), 29 U.S.C. § 1106(a) – (b).

8.      Defendants, who are or were, during the Class Period, statutory fiduciaries of the Plan under ERISA and were designated under the Plans' governing documents to carry out

fiduciary functions, have violated their fiduciary duties and engaged or aided and abetted the fiduciary breaches and/or other statutory breaches by other Defendants.

9.      Plaintiff's First and Second Claim for Relief alleges that Defendants during the Class Period were responsible for selecting, monitoring, and removing the investments in the Plans and failed to prudently mange the Plan and were guilty of disloyal conduct towards the Plan.  Each of the individual Defendants was an officer or employee of General Electric Asset Manager, Inc. ("GEAM") GE's wholly owned financial advisory/money manager subsidiary. Instead of acting for the exclusive benefit of the Plan and its participants and beneficiaries with respect to managing the Plan's assets, these Defendants acted for the benefit of GEAM because GE was seeking to increase GEAM's sale value.  To enhance GEAM's value, Defendants offered plan participants a menu of investment options that preponderated with GEAM underperforming propriety funds that the fiduciaries would not replace or eliminate.  GE has profited handsomely from these arrangements, earning tens of millions of dollars in fees during the Class Period and enhancing GEAM's sale value.  Thus the investment decisions of Defendants breached their fiduciary duties under ERISA.

10.     Plaintiff's Third Claim for Relief alleges that the Defendant caused the investment decisions made by Plan and "parties-in-interest" to engage in prohibited transaction during the Class Period.  Each time the Plans invested Participant assets or allowed parties-in-interest to be paid fees and costs from Plan assets to GEAM in connection with the Plans' investment in a GE-affiliated investment option, these Defendants caused the Plans to engage in a prohibited transaction under ERISA.  Each time the Plans paid fees to a GE-affiliated investment manager, the Plan engaged in transactions prohibited by ERISA § 406(b), which prohibits Defendants from causing the Plans to engage in a transaction benefiting a party-in-

interest person, here GE and GEAM and its Trustees and its affiliates, whose interests are adverse to the interests of the Plans and their participants and beneficiaries, and prohibits GE and GEAM from dealing with Plan assets in its own interest or for its own account.

11.     Plaintiff's Fourth Claim for Relief alleges that Defendants GE and GEAM failed to monitors the Trustees and other fiduciaries of the Plan to ensure that all fiduciaries were acting in accordance with ERISA fiduciary duties of prudence and loyalty and avoiding engaging in prohibited transactions.

12.     Plaintiff's Fifth Claim for Relief alleges a co-fiduciary liability under ERISA 405(a) against all Defendants who had knowledge of other fiduciaries' breach of duties and/or role in prohibited transaction.

13.     This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409 and 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109 and 1132(a)(2).

14.     Plaintiff brings this action on behalf of the Plans for losses to the Plans and for disgorgement of unlawful fees, expenses, and profits taken by Defendants, and to obtain such further equitable or remedial relief as may be appropriate to redress and to enforce the provisions of Title 1 of ERISA.

15.     This class action is brought on behalf of participants in the Plans who participated from November 1, 2011 through the present except for prohibited transaction based claims which end on July 1, 2017 (the "Class Period").

**JURISDICTION AND VENUE**

16.     **Subject Matter Jurisdiction.**  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the

United States, and pursuant to ERISA § 502(E)(1), 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title 1 of ERISA.

17.     **Personal Jurisdiction.**  This court has personal jurisdiction over Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and the Plans are and were administered in this District and the breaches of ERISA took place herein.  This Court also has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in New York.

## PARTIES

**Plaintiff**

18.     Plaintiff Brian Sullivan is a resident of the State of New York.  Plaintiff is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and had a portion of his plan assets invested in GEAM Funds during the Class Period.

**Defendants**

19.     Defendant General Electric Company ("GE" or the "Company") is the sponsor of the Plan and its Administrator.

20.     GE is liable herein by virtue of its own actions and failures to act as Plan fiduciary as both Sponsor of the Plan and as Administrator of the Plan.  GE is also liable under the doctrine of *respondeat superior* in that the executive officers of its former wholly owned subsidiary, GEAM, were and are the Trustees of the Plan and acted on behalf of GE with regard to Plan management and administration.  The Trustees were at all times employees and agents of

GEAM and GE and GE is also liable for their actions and failures to act under the doctrine of *respondeat superior*.  GE is also liable for the actions and failures to act of GEAM.

21.     Defendant GEAM was a wholly owned subsidiary of GE and served as "investment advisor" to GEAM Funds offered to plan participants.  Throughout the Class Period, GEAM and the Trustees (defined hereinafter) exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets and was a fiduciary of the Plan.  GEAM served as investment manager of the plans within the meaning of ERISA 3(38), 29 U.S.C. 1002 (38) to the GEAM Funds and is a fiduciary with respect to the assets allocated thereto.

22.     GEAM is also liable in *respondeat superior* for the actions of the Trustees, all of whom were GEAM employees until GEAM's sale in 2016.

23.     Defendants Dmitri Stockton, Cheryl Beacock, Anand Hari, Ralph Richard Layman, Dan Torey and Daniel O. Colao (the "Trustees") were all executive officer of GEAM and Trustees of the Plan during the Class Period.

24.     As explained in further detail below, during the Class Period, the Trustees had certain responsibilities with respect to the Plan, including the power to remove investment options from the Plan and the Trustees were therefore fiduciaries of the Plan.

25.     As alleged above, the Trustees of the Plan "represented" GEAM, the investment advisor, and GE, the Plan Sponsor, and so were responsible for management and administration of the Plan, including especially the responsibility and power to include or exclude investment options.

26.     All Defendants were fiduciaries of the Plan during the Class Period within the meaning of ERISA 3(21)(A)(i) and (iii), 29 U.S.C. § 1002 (21)(A)(i) and (iii) and "parties-in-

interest" to the Plans within the meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. 1002

(14)(A)(C).

27.     "John Doe" Defendants 1 – 25 (collectively "John Doe Defendants"), include the

other persons who may have had fiduciary status, duties and responsibilities with respect to the

Plan.  The identities of the John Doe Defendants are currently unknown to Plaintiff.  Once their

identities are ascertained, Plaintiff will seek leave to join them to the instant action under their

true names.

**THE PLAN**

28.     The Plan is sponsored by Defendant GE.  The Plan is a defined contribution plan

established under the provisions of Section 401(a) of the Internal Revenue Code and is an

"employee pension benefit plan," as defined by § 3(a)(A) of ERISA, 20 U.S.C. § 1002(2)(a).

The Plan is a legal entity that can sue and be sued.  ERISA § 502(D)(1), 29 U.S.C. § 1132(d)(1).

However, in a breach of fiduciary duty action such as this, the Plan is neither a defendant nor a

plaintiff.  Rather, pursuant to ERISA § 409, 29 U.S.C. § 1109, and the law interpreting it, the

relief requested in this action is for the benefit of the Plan and its Participants.

29.     The assets of an employee benefit plan, such as the Plan, must be "held in trust by

one or more trustees."  ERISA § 403(a), 29 U.S.C. § 1103(a).

30.     Throughout the Class Period Participants were allowed to direct the investment of

contributions among a variety of investment options selected by the Plan's fiduciaries.

31.     Eligible employees of the Company and participating affiliates may participate in

the plan by investing up to 30% of their eligible earnings in one or more of 15 investment

options or "Target Retirement Date Funds."

32.     There was no requirement, in the Plan or otherwise, that any fiduciary of the Plan was offer GEAM managed investments as an investment option for the Participants.

33.     The Plan generally provides for employer matching contributions of 50% of employees' contributions of up to 7% of their earnings, that is, a 3.5% maximum matching contribution. For certain eligible employees, whose first day of work was on or after January 1, 2005, such matching contributions are generally 50% of employees' contributions of up to 8% of earnings, that is, a 4% maximum matching contribution.

34.     Certain eligible salaried employees (whose first day of work is on or after January 1, 2011) and certain eligible production employees (whose first day of work is on or after January 1, 2012) also receive a Company Retirement Contribution generally equal to 3% of their earnings, irrespective of any employee contributions. Those production employees may also be eligible for an Additional Company Retirement Contribution ("ACRC") equal to $600 per year credited in the following January and a one-time additional $300 for a total of $900 credited in January 2016. Hereinafter, the Company Retirement Contribution and the ACRC shall be referred to collectively as "Company Retirement Contributions" ("CRCs"). The CRCs are in addition to the employer matching contribution. A participant who does not have a regular investment election on file will be electing to invest the CRCs in the TRD Fund consistent with the participant's age.

35.     Newly hired non-union employees who are eligible for CRCs and who have not made an affirmative election regarding the amount (if any) of their own savings are automatically enrolled as electing to contribute 8% of eligible pay as pre-tax contributions. This election entitles these employees to the maximum 4% matching contribution. A participant who does not have a regular investment election on file will be electing to invest these contributions

in the TRD Fund consistent with the participant's age. These elections can be changed at any time before or after the employee is automatically enrolled.

36.     Effective January 1, 2016, the Plan was amended to automatically enroll current and newly hired union employees who are eligible for CRCs and who have not made an affirmative election regarding the amount (if any) of their own savings as electing to contribute 2% of eligible pay as pre-tax contributions. This election entitles these employees to a 1% matching contribution. A participant who does not have a regular investment election on file will be electing to invest these contributions in the TRD Fund consistent with the participant's age. These elections can be changed at any time before or after the employee is automatically enrolled.

37.     Administrative costs of the Plan and investment advisory costs for the GE Stock Fund, ST Interest fund, the Money Market Fund and the Synchrony Stock Fund are generally borne by the Company.  For the registered investment companies including the GEAM Funds, the Index Funds, and the TRD Funds, investment advisers receive a management fee for providing investment advisory services.  These management fees are reflected in interest and dividend income for the registered investment companies and in net appreciation in fair value of investments for the Index Funds and TRD Funds on the statements of changes in net assets available for plan benefits and are thus not readily apparent to Plan Participants.

## DEFENDANTS' FIDUCIARY STATUS

### The Nature Of Fiduciary Status

38.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), such as the Benefits Plan Committee, but also any other persons who in fact perform fiduciary functions ("de facto fiduciary"). A person is a fiduciary to

the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i). During the Class Period, Defendants performed fiduciary functions under this standard and thereby also acted as fiduciaries under ERISA.

39.     Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and the participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan's documents, through their conduct, and under ERISA.

40.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

41.     GE as the Plan Administrator, is responsible for selecting, monitoring and removing the investment options in the Plan.  GE designated GEAM and Trustees to execute those responsibilities.  Instead of delegating fiduciary responsibility for the Plan to external service providers, GE chose to delegate investment responsibility to GEAM.

42.     GE and GEAM, by and through their respective Boards, appointed the Trustees of the Plan.

43.     The Trustees duties of loyalty to GEAM as executive officer of GEAM, conflicted with their fiduciary duties to the Plan and affected the Trustees' best judgment as to what actions were in the best interests of the Plan.

44.     By failing to install independent trustees and fiduciaries, the Defendants breached their fiduciary duties which required them to avoid conflicts of interest or, where conflicts arose, to mitigate and eliminate such conflicts.

45.     During the Class Period, GE and GEAM, exercised control over the activities of GEAM employees who were Trustees and performed fiduciary functions with respect to the Plan.  GE and GEAM, could hire, appoint, terminate, and replace such employees at will. Thus, GE and GEAM were responsible for the activities of their employees and subsidiaries through traditional principles of agency and *respondeat superior* liability.

46.     Under basic tenets of corporate law, GEAM and GE is imputed with the knowledge that the Trustees had regarding the misconduct alleged herein, and, hence, like the fiduciaries who acted on GE's behalf, had knowledge of the imprudent actions alleged herein.

47.     In light of the foregoing duties, responsibilities, and actions, GE and GEAM, were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), during the Class Period in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

48.     Trustees were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

49.     Under ERISA, fiduciaries who exercise discretionary authority or control over the

selection of plan investments and the selection of plan service providers must act prudently and

solely in the interest of participants and beneficiaries of the plan when performing such

functions.  As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other
> factors, the availability, riskiness, and potential return of
> alternative investments for his or her plan.  [Where an investment],
> if implemented, causes the Plan to forego other investment
> opportunities, such investments would not be prudent if they
> provided a plan with less return, in comparison to risk, than
> comparable investments available to plan, or if they involved a
> greater risk to the security of plan assets than other investments
> offering a similar return.

DOL Opinion 88-16A (1988).

50.    In a separate publication, the Department of Labor writes:

> The Federal law governing private-sector retirement plans, the
> Employee Retirement Income security Act (ERISA), requires that
> those responsible for managing retirement plans – referred to as
> fiduciaries – carry out their responsibilities prudently and solely in
> the interest of the plan's participants and beneficiaries.  Among
> other duties, fiduciaries have a responsibility to ensure that the
> services provided to their plan are necessary and that the cost of
> those services is reasonable.
>
> * * *
>
> Plan fees and expenses are important consideration for all types of
> retirement plans.  As a plan fiduciary, you have an obligation
> under ERISA to prudently select and monitor plan investments,
> investment options made available to the plan's participants and
> beneficiaries, and the persons providing services to you plan.
> Understanding and evaluating plan fees and expenses associated
> with plan investments, investment options, and services are an
> important part of a fiduciary's responsibility.  This responsibility is
> ongoing.  After careful evaluation during the initial selection, you
> will want to monitor plan fees and expenses to determine whether
> they continue to be reasonable in light of the services provided.

\* \* \*

> By far the largest component of plan fees and expenses is associated with managing plan investments.  Fees for investment management and other related services generally are assessed as a percentage of assets invested.  Employers should pay attention to these fees.  They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns.  Net total return is the return after these fees have been deducted.  For this reason, these fees, which are specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits Security Admin. (Dec. 2011), http://www.dol.gov.ebsa/publications/undrstndgrtrmnt.html.

51.      GE and GEAM failed to properly appoint, monitor and inform the Trustee Defendants and/or others who exercised day-to-day responsibility for the management and administration of the Plan and its assets.

**Duties And Obligations Under ERISA Of Fiduciaries And Parties-In-Interest**

52.      The Plan's trustees and investment advisors described herein, as well as GEAM and the Company and Plan participants, are each a "party in interest" to the Plan as defined by ERISA.  GEAM is the investment adviser to six of the Plan's investment options, which included actively managed funds in equity and fixed income asset classes.  BlackRock Institutional Trust Company, N.A. ("BlackRock") is the investment advisor to six of the Plan's investment options, which include passively managed funds in equity and fixed income classes (collectively referred to herein as the "Index Funds").  AllianceBernstein, L.P. ("AllianceBernstein") is the investment adviser to the Plan's suite of thirteen Target Retirement Date Funds.  Effective July 15, 2014, State Street Global Advisors, a division of State Street Bank and Trust Company ("SSgA") became the investment manager for the GE RSP Government Money Market Fund, replacing GEAM.

**THE GEAM FUNDS**

53.     As of December 31, 2015, 68% of the Plan's assets comprised GE-related investment options and approximately 56% of the pooled investment fund options available in the Plan consisted of five of GE's Proprietary mutual funds.

54.     The Plan was vital to GE's mutual fund business and the healthy growth of its bottom line.  According to public documents, as of December 31, 2015, the Plan owned the vast majority of assets in the following proprietary mutual funds:

| Fund Name | Percentage Owned by the Plan |
|---|---|
| GE Institutional International Equity Fund | 90% |
| GE Institutional Small Cap Equity Fund | 84% |
| GE Institutional Strategic Investment Fund | 75% |
| GE RSP U.S. Income Fund | 75% |
| GE RSP U.S. Equity Fund | 70% |

55.     GE's selection of its proprietary mutual funds for the Plan provided GEAM a constant source of fees and helped inflate the market value of GEAM, which GE sold to State Street for a reported $485 million on July 1, 2016.  At the time of the sale, GEAM managed approximately $8 billion of the Plan's assets.

56.     GE RSP Income Fund (the "Income Fund") – The Income Fund managed by GEAM seeks a high interest rate of return over a long-term period consistent with the preservation of capital by investing at least 80% of its net assets in debt securities.  GEAM's RSP Income Fund was the only instant option offered to Plan Participants who wanted to invest in bonds with duration of one year or more.

57.     GE RSP U.S. Equity Fund (the "U.S. Equity Fund") – The U.S. Equity Fund managed by GEAM seeks long-term growth of capital and income by investing at least 80% of

its net assets in equity securities of U.S. companies, such as common and preferred stocks. GEAM's RSP Equity Fund was the only investment option offered to Plan Participants who wanted to invest in a fund with a U.S. large cap equity strategy.

58.     GE Institutional International Equity Fund (the "International Fund") – The International Fund managed by GEAM seeks long-term growth of capital by investing at least 80% of its net assets in equity securities, such as common and preferred stocks. The International Fund invests primarily in companies in both developed and emerging market countries outside the United States. GEAM's International Equity Fund was the only investment option offered to Plan Participants who wanted to invest in a fund with an intentional large cap equity strategy.

59.     GE Institutional Small-Cap Equity Fund (the "Small-Cap Fund") – The Small-Cap Fund managed by GEAM seeks long-term growth of capital by investing at least 80% of its net assets in equity securities of smaller companies, such as common and preferred stocks.

60.     GE Institutional Strategic Investment Fund (the "Strategic Investment Fund") – The Strategic Investment Fund managed by GEAM seeks maximum total return (total return includes both income and capital appreciation) by investing primarily in a combination of U.S. and Non-U.S. equity and debt securities and cash. GEAM's Strategic Fund was the only investment option offered to Plan participants who wanted "Moderate Risk" and wanted to invest in a combination of U.S. and foregoing equity and debt.

61.     The Income Fund, U.S. Equity Fund, International Fund, Small-Cap Fund and Strategic Investment Fund are registered investment companies subject to specific disclosure and other requirements.

## GEAM FUNDS DRAMATICALLY UNDERPERFORMED
## THE RELEVANT BENCHMARKS FOR THE CLASS PERIOD

62.     The GEAM Strategic Fund underperformed all of its closet peer funds for every year from 2011-2016 and also underperformed its peer index from 2008-2010.

63.     The GEAM International Fund underperformed its peer index in 2008, 2009, 2010, 2011, 2013, 2014 and 2015.  Similarly, this fund underperformed its actively managed fund peers from 2011 through 2016.

64.     The GEAM RSP Equity Fund consistently underperformed its own self-selected benchmark – the S&P 500 Index.  Moreover, consistently from 2010-2016 this fund underperformed the applicable index in years 2010, 2011, 2014, 2015 and 2016.

65.     The RSP Equity Fund was outperformed by peer actively managed funds as well in almost every year from 2011-2016.

66.     The GEAM RSP Income Fund underperformed comparable bond funds from 2011-2016.

## GEAM'S SMALL CAP FUND CHARGED PLAN PARTICIPANTS EXCESSIVE FEES

67.     GEAM's Small Cap Fund consistently charged excessive fees and costs to the Plan.  GEAM's Small Cap fund charges excessive fees to profit GEAM.  The Small Cap Fund charged an annual .88% investment management fee.  By contrast, according to ICI Research Perspective May 2017, Vol. 23, No. 3, "Trends In the Expenses and Fees of Funds, 2016" (see Exhibit A annexed hereto) Figure 1, page 2 demonstrates that from 2010 the average expense ratio declined from .83% to .63% in 2016.  The Small Cap Fund was therefore clearly overcharging GE Plan Participants.

**DEFENDANTS' CONFLICTED INTERESTS AND SELF-DEALING**

68.     In April 2015, GE announced a plan to dismantle its GE Capital business (which included GEAM) which had been a plan-in-progress for years.  That plan involved selling its financial operations including GEAM.

69.     On March 30, 2015, State Street Corp. announced that it had entered into an agreement to buy GEAM for up to $485 million in cash.  In announcing the purchase, Ron O'Hanley, chief executive officer of State Street Global Advisers, said he expected GEAM to generate up to $300 million in revenue in the twelve months following its completion. Previously, O'Hanley said, at an investor conference, that SSGA planned to grow its defined Contribution Plan Asset Management business.  In other words, the main area of SSGA's interest in GEAM was GEAM's business managing GE pension plan fund assets.  Accordingly, GE and GEAM were keenly motivated to maximize GEAM's asset management business through its offering of GEAM Funds to the Plan.

70.     By year end 2015, the Plan's assets constituted the overwhelming majority of the GEAM Funds' assets:

> 90% of the GE Institutional Intentional Equity Fund was owned by the Plan.
>
> 84% of the GE Institutional Small Cap Equity Fund was owned by the Plan.
>
> 75% of the GE Institutional Strategic Investment Fund was owned by the Plan.
>
> 75% of the GE RSP U.S. Income Fund was owned by the Plan.
>
> 70% of the GE RSP U.S. Equity Fund was owned by the Plan.

71.     The true extent of GEAM's and GE's self-dealing with respect to the Small Cap Fund is only truly revealed when it is understood that of the .885 fee, only 70% of the fee

18

approximately .62% is paid to the actual managers of the Small Cap Fund's assets.  The balance, approximately .25% is retained by GE and GEAM.

72.     By restricting investment options in the managed assets categories Restricted Asset Classes to GEAM funds, Defendants have forced plan participants to accept lower returns from investments in poor performing GEAM managed funds when better performing, cheaper, passive funds were available.

73.     This historic record of underperformance of managed funds versus passive benchmarks is glaringly illustrated in S&P Dow Jones SPIVA Research: SPIVA U.S. Score card attached hereto as Exhibit B.  In that report, the graphs at pages 5-7 demonstrate actively managed funds dismal consistent underperformance for the class period years.

74.     Defendant GE breached its fiduciary duties by (a) acting in its own self-interest in maintaining GEAM Funds open as plan investments to Participants in order to maintain and increase the value of GEAM for an eventual sale; (b) hiring GEAM as the Plan's investment adviser with respect to the GEAM Funds; (c) allowing GEAM Funds to charge excessive fees to Plan Participants; (d) failing to properly monitor GEAM and the Trustees; and (e) failing to avoid, manipulate or eliminate conflicts of interest.

75.     Defendant GEAM and the Trustees breached their fiduciary duties by (a) acting in its own self-interest to offer GEAM Funds to the Plan so GEAM could continue to earn fees and soft money compensation attendant to the active management of the GEAM Funds; (b) allowing its employees to serve as Trustees of the Plan; (c) charge excessive fees to the Plan; (d) failing avoid, mitigate or eliminate conflicts of interest.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Failure To Prudently Manage The Plan And Assets Of The Plan
### (Against All Defendants)

76.     Plaintiff incorporates by reference the paragraphs above.

77.     The Count alleges breaches of the duty of prudence against all Defendants.

78.     During the Class Period, Defendants, had they properly discharged their fiduciary obligations, would have known that GEAM Funds were poorly performing and were managed by conflicted Trustees and investment advisors.

79.     The defendants failed to conduct an appropriate investigation into whether GEAM Funds were and continued to be prudent investments for the Plan.

80.     Because Defendants should have known that GEAM Funds were not a prudent investment options for the Plan, they had a fiduciary duty to protect the Plan and its participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in GEAM Funds.

81.     Defendants had available to them several different options for satisfying this duty, including: making appropriate public disclosure, as necessary; divesting the Plan of GEAM Funds; discontinuing further contributions to and/or investment in GEAM Funds under the Plan; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan; and/or resigning as fiduciaries of the Plan to the extent that as a result of their employment by GEAM they could not loyally serve the Plan and its participates in connection with the Plan's acquisition and holding of GEAM Funds.

82.     Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses resulting from the Plan's investment in GEAM Funds.

In fact, Defendants continued to invest and to allow investment of the Plan's assets in GEAM Funds despite their costs and poor performance.

83.     According to DOL regulations  and case law interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

84.     Again, according to DOL regulations, "appropriate consideration" in this context includes, but is not necessarily limited to:

a.      A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action; and

b.      Consideration of the following factors as they relate to such portion of the portfolio:

c.      The composition of the portfolio with regard to diversification;

d.      The liquidity  and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and

e.      The projected return of the portfolio relative to the funding objective of the plan.

85.     As a consequence of these Defendants' breaches of fiduciary duties alleged in this Count, the Plan suffered significant losses.  If these Defendants had discharged their fiduciary duties of prudently invest the Plan's assets, the losses suffered by the Plan would have minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiff and the other Class members, on information and belief, lost hundreds of millions of dollars of retirement savings.

86.     Pursuant to ERISA §§409, 502(a)(2), 29 U.S.C. §§1109(a), 1132(a)(2), these defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Court and to provide other equitable relief appropriate.

## SECOND CLAIM FOR RELIEF

### Disloyal Conduct In Connection With Investments

87.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     The Count alleges fiduciary breach against Defendants Trustees (the "Investment Oversight Defendants")

89.     The Investment Oversight Defendants are directly responsible for selecting, monitoring, and removing investment options in the Plans.

90.     The Investment Oversight Defendants caused the Plans to invest billions of dollars in investment options managed by GEAM favoring exclusively the proprietary investment options of the GEAM Funds for certain asset classes.

91.     The GEAM Funds consistently underperformed benchmarks and peers while GEAM collected excessive and unnecessary fees from the Plan for "managing" the GEAM Funds.

92.     By the conduct and omissions described above, the Investment Oversight Defendants failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plans, in violation of BRISA§ 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A).

93.     The Investment Oversight Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

94.     As a direct and proximate result of these breaches of fiduciary duties, the Plans and their participants have paid GEAM, directly and indirectly, substantial investment management and other fund-related fees during the Class Period, and suffered lost-opportunity costs which continue to accrue, for which the Investment Oversight Defendants are jointly and severally liable pursuant to ERISA § 409, 29 U.S.C § 1109, and ERISA § 502(a)(2), 29 U.S.C §1132(a)(2).

### THIRD CLAIM FOR RELIEF

**Prohibited Transactions In Connection With Investments**

95.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

96.     This count alleges prohibited transactions against all Defendants.

97.     All Defendants were fiduciaries and parties in interest to the Plans.

98.     The Defendants caused the Plans to engage in prohibited transactions under ERISA with each purchase of investment shares from GEAM Funds and payment by the Plans of fees to GEAM in connection with the Plans' investment in a GEAM-affiliated investment option.

99.     By the conduct and omissions described above, the Defendants violated ERISA regulations against prohibited transactions:

        a.      By causing the Plans to engage in transactions that they knew or should have known constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest, in violation of ERISA §406(a)(1)(D), 29 U.S.C. § 1106 (a)(1)(D); and

        b.      By causing the Plans to engage in the above conduct and omissions,  in which a fiduciary to the Plans dealt with the assets of the Plans in its own interest or for its own account in violation of ERISA § 406(b)(l), 29 U.S.C. §  1106(b)(l); and

        c.      By causing the Plans to engage in the above conduct and omissions,  in which a fiduciary to the Plans, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plans or the interests of its participants or beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

100.    Although Section 406 proscriptions against prohibited transactions may not apply to a Plan's acquisition of shares of an open ended investment company registered under the Investment Company Act of 1940, in certain circumstances, here, such exception (PTE 77-3, 42 Fed. Reg. 18, 374 (1977)), does not apply because the four conjunctive conditions for applicability have not been met.

101.    Here, GE and GEAM used the retirement assets of its employees to make GEAM more profitable and thus more marketable for GE's divestiture plans.

102.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Defendants are liable to disgorge all fees received from the Plans, directly or indirectly, and profits thereon, and restore all losses suffered by the Plans caused by their breaches of duty.

103.     Pursuant to ERISA § 404, Defendants had a duty to discharge their duties with respect to the Plan solely in the interests of the Participants and for the exclusive purpose of providing benefits to the Participants.

<u>FOURTH CLAIM FOR RELIEF</u>

**Failure To Monitor Fiduciaries**

104.     Plaintiff incorporates by this reference the allegations above.

105.     This Count alleges breaches of the fiduciary duty to monitor other fiduciaries and is brought against Defendants GE and GEAM (the "Monitoring Defendants").

106.     As alleged above, during the Class Period the Monitoring Defendants were ERISA fiduciaries who were bound by the duties of loyalty, exclusive purpose and prudence.

107.     The scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

108.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

109.     The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work

and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

110.     Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently mange the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

111.     As a consequence of the Monitoring Defendants' breaches  of fiduciary duty, the Plan suffered tremendous losses.  If the Monitoring Defendants had  discharged  their  fiduciary monitoring  duties  as  described  above,  the  losses suffered by the Plan would have been minimized  or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiff and the other Class members, upon information and belief, lost hundreds of millions of dollar of retirement savings.

112.     Pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109(a), 1132(a)(2), the Monitoring Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## FIFTH CLAIM FOR RELEIF

### Co-Fiduciary Liability
### (Against All Defendants)

113.     Plaintiff incorporates by reference the allegation above.

114.     This count alleges co-fiduciary liability against all Defendants (the "Co-Fiduciary Defendants").

115.     As alleged above, during the Class Period, the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

116.     As alleged above, ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  The Co-Fiduciary Defendants breached all three provisions.

117.     ERISA § 405(a)(3), 29 U.S.C. § 1005, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if, he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.  Each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.  GEAM, through its officers and employees, engaged in highly risky and inappropriate business practices, withheld material information from the market, and profited from such practices, and, thus, knowledge of such practices is imputed to GEAM as a matter of law.

118.     Because Defendants knew of the Company's failure and inappropriate business practices, they also knew that the Prudence Defendants were breaching their duties by continuing to invest in GEAM Funds. Yet, they failed to undertake any efforts to remedy these breaches.

119.     ERISA § 405(a) (l), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he

participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. GE and GEAM knowingly participated in the fiduciary breaches of the Trustee Defendants.  Likewise, the Monitoring Defendants knowingly participated in the breaches of the Trustee Defendants because, as alleged above, they had actual knowledge of the facts that rendered GEAM Funds stock an imprudent retirement investment and yet, ignoring their oversight responsibilities, permitted the Trustee Defendants to breach their duties.

120.    ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104 (a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

121.    The Monitoring Defendants' failure to monitor their appointees enables those fiduciaries to breach their duties.

122.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, on information and belief, lost hundreds of millions of dollars or retirement savings.

123.    Pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109(a), 1132(a)(2), the Co-Fiduciary Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## CAUSATION

124.    Upon information and belief, the Plan suffered hundreds of millions of dollars in losses because substantial assets of the Plan were imprudently invested or allowed to be invested

by Defendants in GEAM Funds during the Class Period, in breach of Defendants' fiduciary duties.

125.     Defendants are liable for losses to the Plan's assets invested in GEAM Funds as a result of participant contributions because they failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decisions-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.

126.     Defendants are also liable for losses that resulted from their decision to invest the assets of the Plan in GEAM Funds rather than in other investment funds which were clearly prudent under the circumstances presented here.

127.     Had Defendants properly discharged their fiduciary and co-fiduciary duties, including the monitoring and removal of fiduciaries who failed to satisfy their ERISA-mandated duties of prudence and loyalty, eliminating GEAM Funds stock as an investment alternative when it became imprudent, and divesting the Plan of GEAM Funds when such an investment became imprudent, the Plan would have avoided some or all of the losses that it, and indirectly the participants, suffered.

128.     **REMEDIES FOR BREACHES OF FIDUCIARY DUTY**

129.     The Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in GEAM Funds during the Class Period.

130.     As a consequence of Defendants' breaches, the Plan suffered significate losses.

131.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under BRISA § 409, 29 U.S.C. § 1109.  Section 409 requires

"any  person who is a fiduciary ... who breaches any of the ... duties imposed upon fiduciaries ... to make good to such plan any losses to the plan ...."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate ...."

132.     With respect to calculation of the losses to the Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plan's assets in the most profitable alternative investment available to them.  The Court should adopt the measure of loss most advantageous to the Plan.  In this way, the remedy restores the Plan's lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

133.     Plaintiff and the Class are, therefore, entitled to relief from the Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by BRISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches  alleged above, as provided by ERISA §§ 409(a), 502(a), 29 U.S.C. §§ 1109(a), 1132(a)(2); (c)  reasonable attorney fees and expenses, ad provided by BRISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs and interest on these amounts as provided by law; and (f) such other legal or equitable relief as may be just and proper.

134.     Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## CLASS ACTION ALLEGATIONS

135.    Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(l)(B)

(preferred) or, alternatively, (b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff

and the following class of persons similarly situated (the "Class"):

> All persons, other than Defendants, who were participants in or
> beneficiaries of the Plan at any time between June 20, 2011 and
> June 15, 2017 and whose accounts included investments in GEAM
> Funds.

136.    The members of the Class are so numerous that joinder of all members is

impracticable.  While the exact number of Class members is unknown to Plaintiff at this time,

and can only be ascertained through appropriate discovery, Plaintiff believes that there are

substantially in excess of 10,000 class members.  Plaintiff believes that a majority of participates

and beneficiaries held GEAM Funds in their Plan accounts.

137.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting solely individual members of the Class.  Among the

questions of law and fact common to the Class are:

    a.    Whether Defendants each owed a fiduciary duty to Plaintiff and members

of the Class;

    b.    Whether Defendants breached their fiduciary duties to Plaintiff and

members of the Class by failing to act prudently and solely in the interests of the Plan's

participants and beneficiaries;

    c.    Whether Defendants violated ERISA; and

    d.    Whether the Plan has suffered losses and, if so, the appropriate measure of

damages.

138.     Plaintiff's claims are typical of the claims of the members of the Class because to the extent Plaintiff seeks relief on behalf of the Plan pursuant to ERISA § 502(a)(2), his claims on behalf of the Plan are not only typical to, but identical to a claims under this section brought by any Class member.

139.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

140.     Rule 23(b)(1)(B) Requirements.  Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

141.     Rule 23(b) (3) Requirements.  The requirements  of Rule 23(b)(3) are also satisfied here because the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

a.     the members' interests in individually controlling the prosecution or defense of separate actions;

b.     the extent and nature of any litigation concerning the controversy already begun by or against class members;

c.     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        d.        the likely difficulties in managing a class action.

142.      In this case the questions of law or fact  common to class members include whether Defendants were fiduciaries of the Plan, whether GEAM Funds were prudent investments for the Plan accounts, whether certain disclosures to Participants had to be made (question of law) and were made (question of fact), and what is the amount of loss to the Plan from the breaches of fiduciary duty, and these questions clearly predominate over questions affecting only individual members, such as the amount of loss to each Plan account.  Further, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, since proceeding as a class action will allow judicial supervision and thereby greater protection of class members and proceeding as a class action will allow for the possibility of class notice, or of periodic class notices, to benefit the class members.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.      A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B.      A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404 (c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's  assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.      Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

F.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

G.      An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:          November 1, 2017

                                        HUTCHINGS BARSAMIAN
                                        MANDELCORN, LLP

                                        By:/s/Theodore M. hess-Mahan
                                        Theodore M. Hess-Mahan
                                        110 Cedar Street
                                        Suite 250
                                        Wellesley Hills, Massachusetts 02481
                                        Tel:  (781) 431-2231
                                        thess-mahan@hutchingsbarsamian.com

                                        SQUITIERI & FEARON, LLP
                                        LEE SQUITIERI
                                        32 East 57th Street
                                        12th Floor
                                        New York, New York 10022
                                        Tel:  (212) 421-6492
                                        Fax:  (212) 421-6553
                                        lee@sfclasslaw.com