UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                  |   |                                  |
|----------------------------------|---|----------------------------------|
|                                  | * |                                  |
|                                  | * |                                  |
|                                  | * |                                  |
| IN RE: G.E. ERISA LITIGATION     | * | Civil Action No. 17-cv-12123-IT  |
|                                  | * |                                  |
|                                  | * |                                  |
|                                  | * |                                  |
|                                  | * |                                  |

MEMORANDUM & ORDER

December 14, 2018

TALWANI, D.J.

This putative class action is brought by participants in a 401(k) plan[1] against institutional

and individual defendants[2] alleging breaches of fiduciary duties and prohibited transactions in

violation of the Employee Income Retirement Security Act of 1974 ("ERISA"). Second Consol.

---

[1] Plaintiffs are Maria LaTorre, Robyn Berger, Brian Sullivan, Frank Magliocca, Melinda Stubblefield, Kristi Haskins, Laura Scully, Donald J. Janak, John Slatner, and Chip Knight.
[2] Defendants are General Electric Company ("GE"), GE Asset Management, Benefit Plan Investment Committee, GE Asset Management Committee, GE Pension Board, GE Board of Directors, GE Retirement Savings Plan, Robert Lane, Lowell McAdam, Carol Anderson, Sebastien Bazin, W. Geoffrey Beattie, George Bicher, Jeff Bornstein, Gregory Bouleris, John Brennan, James Cash, Paul Colonna, Michael Cosgrove, Matt Cribbins, Sharon Daley, Marjin Dekkers, Francisco D'Souza, John Flannery, Ann Fudge, Edward Garden, Gregory Hartch, Jan Hauser, Peter Henry, Dr. Susan Hockfield, Jessica Holscott, Jeffrey Immelt, Dan Janki, Andrea Jung, Raghu Krishnamoorthy, Vaidheesh Krishnamurti, Alan Lafley, Kelly Lafnitzegger, Jeanne LaPorta, Risa Lavisso-Mourey, Ralph Richard Layman, Rochelle Lazarus, John Lynch, Puneet Mahajan, Jamie Miller, Steven Mollenkopf, James Mulva, Sam Nunn, Roger Penske, Susan Peters, James Rohr, John Samuels, Mary Schapiro, Trevor Schauenberg, Keith Sherin, Scott Silberstein, Matthew Simpson, Dmitri Stockton, Robert Swieringa, James Tisch, Donald Torey, John Walker, Douglas Warner, Pamela Westmoreland, David Wiederecht, Tracie Winbigler, Brian Worrell, and Matthew Zakrzewski. On October 4, 2018, Plaintiffs filed a Notice of Dismissal Without Prejudice of Certain Individual Defendants [#101], dismissing Sebastien Bazin, Greg Bouleris, Edward Garden, Peter Henry, Dan Janki, Raghu Krishnamoorthy, Vaidheesh Krishnamurti, Risa Lavisso-Mourey, Lowell McAdam, Steven Mollenkopt, Scott Silberstein, and Pamela Westmoreland, without prejudice.

Am. Compl. ("Second Am. Compl.") ¶ 1.[3] Pending before this court is Defendants' Motion to

Dismiss the Second Consolidated Amended Complaint [#63]. After a hearing, the court denied

the motion as to Counts I, II, V, VI, VII, and VIII, and took Counts III and IV under advisement.

See Elec. Order [#93].

For the following reasons, Defendants' motion is ALLOWED as to Count III and

DENIED as to Count IV.

I.      FACTUAL ALLEGATIONS

The following facts are relevant to Counts III and IV:

Eligible employees of GE and participating affiliates can participate in GE's 401(k) Plan,

a/k/a the GE Retirement Savings Plan ("the Plan") by investing up to 30% of their eligible

earnings in any of a number of investment options within the Plan. Second Am. Compl. ¶ 70.

This action pertains to Plaintiffs' investments in five mutual funds among these options: the GE

Institutional Strategic Investment Fund ("Strategic Investment Fund"), the GE Institutional Small

---

[3] Plaintiffs asserted the following claims: (1) Count I for breach of fiduciary duties in violation of
ERISA §§ 404(a) (1) (A) and (B) against the Benefit Plan Investment Committee Defendants and
the Asset Management Defendants; (2) Count II for breaches of fiduciary duties in violation of
ERISA §§ 404(a)(1)(A), (B), and (D) against Defendant GE and the Pension Board Defendants;
(3) Count III for prohibited transactions in violation of ERISA
§§ 406(a)(1) (A), (C), and (D) against Defendant GE, the Benefit Plan Investment Committee
Defendants, the Asset Management Defendants, and Defendant GE Asset Management; (4)
Count IV for prohibited transactions in violation of ERISA §§ 406(b)(1) and (3) against
Defendant GE, the Benefit Plan Investment Committee Defendants, and the Asset Management
Defendants; (5) Count V for breach of fiduciary duties in violation of ERISA §§ 404(a)(1)(A),
(B), and (D) against the Asset Management Defendants; (6) Count VI for breaches of fiduciary
duties of prudence and loyalty in violation of ERISA § 404(a) against the Board Defendants and
the Benefit Plan Investment Committee Defendants for failure to monitor other fiduciaries; (7)
Count VII for co-fiduciary liability under ERISA § 405 against Defendant GE, the Board
Defendants, the Pension Board Defendants, the Benefit Plan Investment Committee Defendants,
the Asset Management Defendants, and the Fund Trustee Defendants; (8) Count VIII for
knowing participation in a fiduciary breach or violation of ERISA pursuant to ERISA
§ 502(a)(3) against Defendant GE and Defendant GE Asset Management. See Second Am.
Compl. ¶¶ 158-222 [#54].

Cap Equity Fund ("Small Cap Equity Fund"), the GE Institutional International Equity Fund ("International Equity Fund"), the GE RSP Income Fund ("Income Fund"), and the GE U.S. Equity Fund ("US Equity Fund") (collectively, the "GE Funds"). Second Am. Compl. ¶¶ 1-2.

The GE Funds are the only actively managed funds open to eligible employees of GE and participating affiliates. Id. ¶¶ 70-71. Employees and affiliates can also participate in the Plan by investing in the GE Stock Fund, six collective trust index funds, Target Date Funds, and/or a Money Market Fund. Id. ¶ 71. GE also required that certain proprietary investment options, the Income Fund and the US Equity Fund, be offered to Plan participants. Id. ¶ 72.

Plaintiffs allege that Defendants used the Plan participants to offset the investor exodus from the underperforming funds despite the fact that the Plan participants could have been better served by investment options from unaffiliated companies that were cheaper and better performing. Id. ¶ 5. As of December 31, 2015, the Plan owned the vast majority of assets in the five mutual funds; assets from Plan participants ranged from approximately 40% of all fund assets to approximately 96% of all fund assets, depending on the fund and the year. Id. ¶ 91.

All of the Plan's actively managed funds were managed and sponsored by GE's wholly-owned subsidiary, GE Asset Management, until July 1, 2016, when GE sold the subsidiary to State Street for a reported $485 million dollars. Id. ¶¶ 75, 78. Plaintiffs allege that GE retained the poorly performing proprietary funds as a constant source of fees and to help inflate the market value of GE Asset Management prior to its sale to State Street. Id. ¶ 78. Of the total $28 billion-dollar value of the Plan, at the time of its sale, GE Asset Management managed $8 billion in assets. Id. ¶¶ 66, 78. Furthermore, from 2010 to 2016, GE earned more than $175 million in fees from the proprietary funds. Id. ¶ 7.

II.     DISCUSSION

A.  Statute of Limitations

Defendants argue that Counts III and IV are barred because of the statute of limitations.

Pursuant to 29 U.S.C. § 1113(2):

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part . . .
>
> (1)     three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> . . .
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Prior to 1987, 29 U.S.C. § 1113 contained a constructive knowledge provision in which the limitations period began when a plaintiff "could reasonably be expected to have obtained knowledge of a breach or violation." Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 141 (1st Cir. 2005) (internal citations and quotations omitted). "Actual knowledge" in the current version of the statute consists of awareness of "the essential facts of the transactions or conduct constituting the violation." Id. at 142. The question of when actual knowledge exists thus is dependent on the facts of each individual case. Id. Distinguishing between the former constructive knowledge requirement and today's actual knowledge requirement, the First Circuit explained that "[w]here the alleged breach arises out of a financial transaction involving ERISA plan funds, determining where the distinction between actual and constructive knowledge lies in a particular case may depend on the level of generality employed in characterizing the transaction at issue, which may depend, in turn, on an examination of the complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation." Id. at 141. Although mere knowledge that "something was awry" is

4

insufficient for actual knowledge, "we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff." Id. at 142. The First Circuit applied this rule in Edes, finding that the plaintiffs, who claimed that the defendants breached their fiduciary duty by failing to classify them as ERISA plan participants, had the requisite "actual knowledge" shortly after being hired, as "the breach of fiduciary duty arises not from an intricate financial transaction."[9] Id.

Under Count III of the Second Amended Complaint, Plaintiffs allege that the offering of the GE Funds as the sole actively managed investment options constitutes a prohibited transaction in violation of ERISA §§ 406(a)(1)(A), (C), and (D). Second Am. Compl. ¶¶ 176-186. Plaintiffs allege that the GE Funds were offered throughout the putative class period, which began in September 2011, and that each of them were participants in the Plan during the class period and were invested in the GE Funds. Id. ¶¶ 1-2, 14-23. The fact that these were proprietary funds would have been immediately known to Plaintiffs, as the funds are labeled as GE Funds, e.g., the GE Institutional Strategic Investment Fund, the GE Institutional Small Cap Equity Fund, the GE Institutional International Equity Fund, the GE RSP Income Fund, and the GE US Equity Fund. Id. ¶ 2. To the extent that the basis of Plaintiffs' claim is that Defendants only offered proprietary funds as the sole actively managed investment options of the Plan, Plaintiffs had actual knowledge the day Plaintiffs elected their Plan options. Thus, Count III is barred by the statute of limitations.

Under Count IV of the Second Amended Complaint, Plaintiffs allege that GE, the Benefit Plan Investment Committee Defendants, and the Asset Management Defendants offered GE

---

[9] In Edes, the First Circuit found that the plaintiffs would have quickly realized from their payroll that they were not classified as employees and not eligible for ERISA plan participation. 417 F.3d at 142.

Funds as the sole actively managed investment options of the Plan despite high costs and poor performance in order to generate management fees and maintain GE Asset Management's performance. Id. ¶¶ 187-197. Because the fees were for the financial benefit of GE and the Asset Management Defendants, Plaintiffs argue that these acts constitute a prohibited transaction in violation of ERISA §§ 406(b)(1) and (3). Id.

Although Plaintiffs could have easily discerned that the funds were proprietary funds, and even that they were paying fees to GE Asset Management, the question of whether Plaintiffs had actual knowledge of high costs and poor performance is much more complex. There are no facts in the Second Amended Complaint to suggest that Plaintiffs had actual knowledge that their funds were performing poorer and their fees cost higher compared to other funds. Even if they did, Plaintiffs would certainly not have known about the sale of GE Asset Management prior to July 1, 2016, to State Street Corporation. Plaintiffs do not only allege that Defendants profited from the management fees, but that they also profited from the financial health of GE Asset Management due to the selection and presence of the GE Funds in GE Asset Management's portfolio. Id. ¶ 191. This financial benefit culminated in the sale of GE Asset Management for a reported $485 million dollars. Id. ¶ 78. As July 2016 is within the three-year statute of limitations, Count IV is not barred by the statute of limitations.

B. Defendants' Further Arguments

Defendants raise two further arguments regarding prohibited transactions: (1) that ERISA § 406 does not apply because the management fees are not a "plan asset," and (2) that even if management fees are a "plan asset," Plaintiffs' claim must be dismissed because Plaintiffs have not pled a non-exempt prohibited transaction. Defs.' Mem. at 24-26 [#64].

Count IV is brought under ERISA § 406(b)(1), which prohibits fiduciaries with respect to the Plan from "deal[ing] with the assets of the plan in his own interest or for his own account," and ERISA § 406(b)(3), which prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Although ERISA does not contain a definition of "plan assets," the First Circuit has found "persuasive" the Department of Labor's formulation (also adopted by other Circuits) that "'assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. . . .'" Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 56 (1st Cir. 2014) (quoting US Dep't of Labor, Advisory Op. No. 93-14A, other citations omitted); see also In re Fid. ERISA Float Litig., 829 F.3d 55, 60-62 (2016) (same).

In In re Fidelity ERISA Float Litigation, the First Circuit held that cash provided to plan participants through an intermediary, Fidelity, no longer constituted a "plan asset." 829 F.3d at 62. "As between the plan and the participant, it is the participant who has the superior claim to property in the cash after redemption. And that is a good reason to reject the claim that the cash should be treated as a plan asset for the purpose of enforcing fiduciary responsibilities under ERISA." Id.; see also Vasquez v. Massachusetts Fin. Servs. Co., No. 17-11249-RWZ, 2018 WL 3518499, at *6 (D. Mass. July 19, 2018) (holding that funds paid out of a fund, rather than the Plan, are not considered assets); Fleming v. Fid. Mgmt. Trust Co., No. 16-cv-10918, 2017 WL 4225624, at *8 (D. Mass. Sept. 22, 2017) (citing In re Fidelity to hold that management fees collected are not "assets of the plan" within the meaning of ERISA "because the fees that the mutual funds and [third party that charges for individual investment advice] collect from the Plan do not go to, and are not intended to go to, the Plan itself, they do not qualify as 'assets of the plan,' as required to make out a claim under 29 U.S.C. § 1106(a)(1)(D)."); Brotherston v. Putman Inv., LLC, 15-cv-13825-WGY, 2017 WL 1196648, at 5 (D. Mass. Mar. 30, 2017), rev'd

on other grounds, <u>Brotherston v. Putnam Inv.</u>, No. 17-1711, 2018 WL 4958829 (1ˢᵗ Cir. Oct. 15,

2018) (cash held by the mutual funds are not "assets of the plan" and only shares of the funds

owned by the plan are considered plan assets).

In contrast to these cases however, Plaintiffs are not simply alleging that Defendants

received financial benefit from the fees, but that as the funds failed to perform, and as other

outside investor left the funds, the number of Plan participants in the funds continued to

increase.[10] Second Am. Compl. ¶¶ 5, 87, 92, 191. Because Plaintiffs' claim is broader and also

encompasses the shares of the funds that financially benefitted Defendants, Plaintiffs' argument

would not be precluded by these cases. Plaintiffs' claim would properly fall under ERISA

§ 406(b)(1).

To the extent that Defendants argue that Plaintiffs' claim falls under PTE-77, an

exemption issued by the Department of Labor, this argument also fails. Although PTE-77

exempts "the acquisition and sale of shares of a registered open-end investment company

('mutual fund') by an employee benefit plan which covers employees of the mutual fund or the

mutual fund's investment adviser or principal underwriter, or an affiliate thereof (hereinafter

referred to as an 'in-house' plan)," the exemption does not relieve a fiduciary from other

provisions of ERISA, including "any prohibited transaction provisions to which the exemption

does not apply" as well as ERISA § 404's general fiduciary responsibilities, which "require a

fiduciary to discharge his duties respecting the plan solely in the interest of the plan's

---

[10] Defendants' arguments seem to assume that Plaintiffs' claim is only towards the management fees. Defendants argue that Plaintiffs' ERISA § 406(b) claim is barred by ERISA § 408(b)(2), which permits transactions otherwise prohibited by § 406(a) "if no more than reasonable compensation is paid." ERISA § 408(b)(2). "The fees of the challenged funds—which were all below 1.00% and are all rated as 'low' compared to their peers, are well within the range established to be reasonable as a matter of law." Defs.' Mem. at 26 [#64].

participants and beneficiaries and in a prudent fashion in accordance with 404(a)(1)(B) of the Act."[11] 42 Fed. Reg. 18,734.

"Defendants bear the burden of proving this exemption, but plaintiff must plead something to show by the exemption would not apply." Vasquez, 2018 WL 3518499, at *7 (denying motion to dismiss the prohibited transaction claim where the plaintiff pled that the defendants "failed to offer Plan participants the separate account options and less expensive share classes available to other investors"); Krueger v. Ameriprise Fin., Inc., No. 11-cv-02781, 2012 WL 5873825, at *17 (D. Minn. Nov. 20, 2012) (finding PTE 77-3 inapplicable in light of allegations that defendants "failed to select the lowest-cost share class" and paid unreasonable fees). Here, Plaintiffs have alleged that Defendants continued to place and keep them in GE Funds despite the funds' lackluster performances to prop up the funds prior to GE Asset Management's sale to State Street. The allegation, at the motion to dismiss stage, would fail the duty of prudence under ERISA § 404(a)(1)(B).[12] At this stage, this exemption would not apply to Count IV.

---

[11] Furthermore, for PTE 77-3 to apply, four conditions must be met: (1) the plan must pay no "investment management, investment advisory or similar fee" to the mutual fund, although the mutual fund itself may pay such fees to its managers; (2) the plan must not pay "a redemption fee" when selling its shares; (3) the plan must not pay a sales commission in connection with the sale or acquisition; and (4) all other dealings between the plan and the affiliated fund must be on a basis no less favorable to the plan than such dealings are with other shareholders. 42 Fed. Reg. 18,734. Plaintiffs have alleged that Plan participants were kept in the GE Funds to offset the investor exodus, despite the fact that the Plan participants could have been better served by investment options from unaffiliated companies that were cheaper and better performing, see Second Amended Complaint ¶ 5, indicating that the fourth requirement has not been met.

[12] "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B).

III.     CONCLUSION

For the foregoing reasons, Defendants' <u>Motion to Dismiss the Second</u>

<u>Consolidated Amended Complaint</u> [#63] is ALLOWED as to Count III and DENIED as

to Count IV.

IT IS SO ORDERED.

Date: December 14, 2018                                    /s/ Indira Talwani
                                                          United States District Judge