UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: G.E. ERISA LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | **CLASS ACTION**<br><br>Master File No. 1:17-12123-IT<br><br>_Leave to File granted on February 3, 2010_ |

**_HASKINS_ PLAINTIFFS' REPLY TO "COORDINATED" PLAINTIFFS' OPPOSITION TO MOTION FOR APPOINTMENT OF ATTORNEYS FROM SANFORD HEISLER SHARP AS LEAD CLASS COUNSEL UNDER RULE 23(g)**

**TABLE OF CONTENTS**

**INTRODUCTION**............................................................................................................1

    A. SQUITIERI'S MISLEADING SOLICITATION ..............................................1

    B. MISLEADING REPRESENTATIONS ...........................................................2

    C. SQUITIERI COUNSEL ADVOCATES REMOVING SHS FROM THIS CASE .........3

**COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY** ...........................3

    A. SQUITIERI COUNSEL MISREPRESENT THE FACTUAL HISTORY OF THIS LITIGATION..........................................................................................4

    B. SQUITIERI COUNSEL'S DISINGENOUS CLAIMS .......................................4

    C. SHS DEVELOPED THIS CASE, THE FACTS AND THE LEGAL THEORY – AND HAS DONE MOST OF THE WORK TO DATE .............................................4

    D. RULE 23(g)(3) GOVERNS APPOINTMENT OF LEAD CLASS COUNSEL     AND TAKES PRECEDENCE OVER INTERIM COUNSEL STATUS....................................5

    E. THE CLASS IS BEST SERVED WITH ONE LEAD COUNSEL.....................................5

**ARGUMENT**..............................................................................................................6

    I. The Applicable Factors and Considerations Weigh in Favor of Appointment of SHS's Attorneys as lead Class Counsel .........................................................6

    A. SHS Developed the Case and Has Done Most of the Work to this Point......................6

    B. SHS's Attorneys Possess Greater Relevant Experience and Knowledge......................8

    C. As Lead Counsel, SHS Will Efficiently Marshal its Resources and harness the Collective Energies of All Counsel for the Benefit of the Class ................................10

    II. Squitieri Counsel's Attacks on SHS and Attempts to Remove SHS from the Action Should Not Defeat SHS's Appointment Under Rule 23(g) .........................................11

**CONCLUSION** ..........................................................................................................14

**INTRODUCTION**

Sanford Heisler Sharp ("SHS") began investigating this matter in December 2016. After almost one year of investigation and case development, SHS filed the initial *Haskins* complaint in September 2017. More than one month later, counsel for the so-called "Coordinated Plaintiffs," referred to as "Squitieri counsel" below, filed three copy-cat cases in rapid succession.[1]

As set forth in the initial motion for SHS's appointment as Lead Counsel (Dkts. 144-155), SHS has investigated and developed this case from the very beginning and expended considerable time and resources in prosecuting the suit. Over the course of the action, SHS has performed the greatest share of the work, including virtually the entire Opposition to GE's Motion to Dismiss and the Opposition to GE's Motion for Reconsideration. *See* Dkt. 146, Field Dec.; Field Reply Decl. ¶¶ 2-12. SHS attorneys have vast experience in class actions and complex litigation.[2] The Co-Chairs of its Financial Services Litigation group, Charles Field and Paul Blankenstein, can fairly be considered ERISA subject matter experts, particularly as to the type of claim at issue here. SHS has dedicated a formidable team to this matter. Collectively, they have mastery over class action practice, ERISA litigation, and the claims in this case.

**A.  SQUITIERI'S MISLEADING SOLICITATION**

Squitieri counsel do not deny (i) that they first started their own investigations after *Haskins* was filed, and (ii) that they commenced their suits by seizing upon and liberally lifting from SHS's original complaint.

---

[1] Counsel for the self-styled "Coordinated Plaintiffs" include Squitieri & Fearon (which filed the *Sullivan* action on October 30, 2017), Gardy & Notis (which filed *Powell* on November 1, 2017), and Robbins Geller (which filed *Latorre* action on November 15, 2017). Collectively, they are referred to as "Squitieri counsel."

[2] Just last week, SHS was appointed as class counsel in an opinion which held: "[SHS] is eminently qualified to spearhead this class action settlement. [SHS] has extensive experience in litigating class actions of this nature… It has demonstrated that experience through its performance in this litigation thus far." *Rapuano v. Trustees of Dartmouth Coll.*, No. 18-cv-1070, 2020 WL 475630, at *9 (D.N.H. Jan. 29, 2020).

In fact, on September 29, 2017, Squitieri & Fearon advertised for plaintiffs on their website three days after SHS filed the *Haskins* Complaint.  Squitieri & Fearon's webpage stated:  "To join **this** class action lawsuit, please contact Lee Squitieri, Esq by e-mail at [ ]or by phone [ ]." http://www.sfclasslaw.com/ge (Field Reply Decl. Ex. 1, emphasis added).

Squitieri & Fearon thereby implied that they were prosecuting an existing class action, which GE employees could join by contacting Mr. Squitieri. In actuality, the only lawsuit in existence was the *Haskins* case.

Additionally, Squitieri & Fearon's website advertisement lifted the *Haskins* class period verbatim (January 1, 2011 to June 30, 2016).  By doing so, Squitieri & Fearon not only plagiarized the *Haskins* allegations but attempted to peel off members of the proposed *Haskins* class by suggesting that they could "join" up through Mr. Squitieri.

On the same day (September 29, 2017), Squitieri & Fearon adopted the same misleading solicitation tactic with respect to a shareholder suit newly filed by another law firm.  The Squitieri firm asked shareholders to join the shareholder suit by contacting their firm.   See Field Reply Decl. n.2.

These misleading solicitations are no accident.  Squitieri & Fearon's remaining case investigation web pages show that the firm knows how to investigate correctly.  In most instances, Squitieri & Fearon invite interested individuals to contact the firm "to learn more about our investigation."  See http://sfclasslaw.com/investigations.

## B.    MISLEADING REPRESENTATIONS

Squitieri counsel's opposing papers (Dkt. 157) are laden with misleading information and inaccuracies. Primarily, Squitieri counsel claim, without support, that the motion for SHS to be named as Lead Counsel has somehow harmed the Class. In particular, Squitieri counsel speculate

that the motion *could have* prompted GE to rescind its stipulation not to oppose class certification, but these "what-if" musings are farfetched and, indeed, counterfactual. GE's stipulation was in no way predicated on any of the Squitieri counsel's status as lead counsel. GE confirms that it has no interest and takes no position on appointment of Class Counsel; it has conceded class certification as a trade-off for the dismissal of certain individual Defendants. Nothing *Haskins* counsel has done in connection with the Motion for Appointment of Lead Counsel in any way risks certification.

## C. SQUITIERI COUNSEL ADVOCATES REMOVING SHS FROM THIS CASE

Squitieri counsel urges this Court to remove SHS and its five Plaintiffs from the case. Such an action would inflict concrete harm on the Class. In light of SHS's qualifications and the extensive work it has performed in conjunction with its clients, excising SHS and its clients would do a disservice to the Class. The *Haskins* Plaintiffs' motion, by contrast, does not seek to exclude "Coordinated Plaintiffs" or their counsel from the action; it merely contends that the litigation would benefit from a leader coordinating counsel's efforts, and that SHS is qualified and able to serve in that role. *See, e.g.,* Dkt. 155, Proposed Order.

Ultimately, the Court should appoint SHS's attorneys as Lead Counsel because they are best able to lead the litigation and represent the interests of the Class. Naming SHS's attorneys as Lead Counsel will increase efficiency and reduce the potential for needless conflict and delay.

## COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY

SHS began investigating GE's 401(k) plan in late 2016 and filed the *Haskins* action on September 26, 2017—almost one year after initiating its investigation. Squitieri counsel apparently started their investigations and a search for plaintiffs only **after** *Haskins* was filed and reported in the press; Squitieri counsel do not deny this. Squitieri counsel also do not contest that they borrowed heavily from the *Haskins* complaint.

3

### A.  SQUITIERI COUNSEL MISREPRESENT THE FACTUAL HISTORY OF THIS LITIGATION

Despite this uncontested record, Squitieri counsel rewrite history by claiming that they were pursuing the litigation before SHS became involved.  Squitieri counsel attempt this feat by disregarding the *Haskins* action and everything that happened before Squitieri counsel filed their copycat complaints in this District.  They thereby seek to recast SHS as the ones interloping on a pending matter. This is a distortion, plain and simple.

### B.  SQUITIERI COUNSEL'S DISINGENUOUS CLAIMS

SHS did not initiate proceedings to interfere with Squitieri counsel's late-filed suits; rather, it intervened in response to GE's motion to transfer *Haskins* from the S.D. Cal. to this District. Seeking to protect the interests of its clients and the Class and preserve the *Haskins* action, SHS properly opposed GE's motion to transfer and also moved to intervene in the D. Mass. action under the first-to-file rule. *See* Dkts. 19-20. Before doing so, SHS invited Squitieri counsel to join the *Haskins* action, but Squitieri counsel refused. Field Reply Decl. ¶ 5. SHS's clients were not obliged to acquiesce to GE's and Squitieri counsel's effort to move *Haskins* to Massachusetts. Nor were SHS's clients obliged to allow Squitieri counsel to seize control over *Haskins*. It is disingenuous for Squitieri counsel, after filing duplicative follow-on actions and seeking to appropriate the *Haskins* case, to claim that the *Haskins* Plaintiffs' prior litigation position (that the case should remain in the S.D. Cal.) represents disdain for the Class and renders SHS inadequate.

### C. SHS DEVELOPED THE CASE, THE FACTS, AND THE LEGAL THEORY—AND HAS DONE MOST OF THE WORK TO DATE

SHS stands by its representations that—consistent with its status as originator of the case— it has performed the largest share of the work and generally assumed a leading role. SHS developed the case, the facts, and the legal theory. Dkt. 146, Field Dec.  SHS took the lead in drafting the

operative Second Amended Consolidated Complaint and in opposing GE's motion to dismiss. Field Reply Decl. ¶ 6. SHS drafted 27 of the 30 pages of the Opposition to that motion, while Squitieri counsel drafted three specific inserts totaling about 3 pages. *Id.* ¶¶ 7-9. The primary individual who contributed to the briefing on Squitieri counsel's side, Jordan Mamorsky of Robbins Geller, is no longer with the firm. Mr. Mamorsky declined to perform any additional work on the brief, indicating that he did not have authorization from partner Evan Kaufman. *Id.* & Ex. 2. Mr. Field of SHS also successfully briefed and argued the prohibited transaction claim, not once but twice. Squitieri counsel's effort to downplay the claim as discrete and subsidiary in importance is refuted by the fact that GE's motion for reconsideration was limited to this claim. *Id.* ¶ 10.

### D. RULE 23(g) GOVERNS APPOINTMENT OF LEAD CLASS COUNSEL AND TAKES PRECEDENCE OVER INTERIM COUNSEL STATUS

On January 9, 2020, the Court issued an Order denying certification without prejudice, pending the identification of specific attorneys as Class Counsel. SHS recognized that the litigation would benefit from appointing a leader responsible for steering the ship and making ultimate decisions in the event of disagreements. SHS further understood that the Court intended to appoint Class Counsel in accordance with its obligation under Rule 23(g) to do so *at the time of certification* ("a court that certifies a class must appoint class counsel"), to consider all relevant factors and considerations set forth in (g)(1)(A-B), and to select the applicant "best able to represent the interests of the class." Consequently, Squitieri counsel's assertions that everything was locked into place two years ago and that "the motion comes two years too late" is inconsistent with the Rule. Interim counsel status under Rule 23(g)(3) is not dispositive of the ultimate question of who will serve as Lead Class Counsel.

### E. THE CLASS IS BEST SERVED WITH ONE LEAD COUNSEL

SHS accordingly proposed that attorney(s) from each firm apply for appointment as Lead

Counsel.[3] SHS seeks to address potential concerns about a leaderless litigation. The Class is best served—and a too-many-cooks situation avoided—if attorneys from a single firm are designated as *first among equals*. Rule 23(g)(2) expressly contemplates competing applications for selection as class counsel; submitting such an application cannot in itself render an applicant inadequate.

**ARGUMENT**

Contrary to Squitieri counsel's contentions, SHS's team of attorneys is best qualified to serve as Lead Counsel for the Class. Squitieri counsel's attempts to undermine SHS, question its motives, and freeze it and its clients out of the action "in any capacity" are baseless. Ironically, it is these attempts that would actually harm the Class by depriving it of the benefit of SHS's expertise in ERISA class actions like this one.

**I.   The Applicable Factors and Considerations Weigh in Favor of Appointment of SHS's Attorneys as Lead Class Counsel**

**A.   SHS Developed the Case and Has Done Most of the Work to this Point**

Following an investigation spanning nearly a full year, SHS filed the initial complaint in this matter. SHS's complaint is based on case theories and claims that the Firm spent substantial time and effort developing. SHS is among the leading firms in this emerging area of ERISA litigation. SHS has implemented its in-depth knowledge of ERISA and of the investment industry to pioneer the use of particular methods and evidence to calculate and demonstrate the imprudence of a plan's investment options. Moreover, it is undeniable that SHS conceived of the theory of *this* case: its analysis and detailed explanation of the deficiencies in GE's 401(k) Plan have formed the template for all subsequent complaints and laid the basic groundwork for the action. Squitieri

---

[3] Before filing this motion, SHS met and conferred with Squitieri counsel. Squitieri counsel represents that SHS agreed on January 9 to submit papers naming individual attorneys from each of the firms before changing its position. This is not so. Field Reply Decl. ¶¶ 13-15. SHS also provided a courtesy notification to counsel for GE, which confirmed that GE took no position regarding appointment of Class Counsel.

counsel's suggestion that it is SHS which has piggybacked on their efforts is pure invention.

SHS has also performed a considerable share of all work on the case to date, amassing more than 1,300 hours of attorney and staff time. Consistent with its status as the progenitor of the action, SHS has typically been at the forefront of collaborative efforts—including opposing GE's motion to dismiss. Squitieri counsel's attempt to portray SHS as a bit player acting at their indulgence is false. Dkt. 146, Field Decl.¶¶ 8-19; Field Reply Decl. ¶¶ 2-12.

Squitieri counsel claim to have performed their own pre-suit investigations, but they describe their efforts only in general terms and provide no comparable timeline. They thus fail to dispute that their inquiries began only after the *Haskins* suit was reported in the media. *See* Field Reply Decl. Ex. 1, http://sfclasslaw.com/ge/ (announcing investigation on September 29, 2017 and inviting GE employees invested in the Plan to contact Mr. Squitieri "[t]o join this class action lawsuit").[4] Squitieri counsel also fail to provide significant information about their hours to date. They indicate that their *combined* hours exceed those of SHS, but this may reflect the very inefficiency and duplication of labor posed by a multi-firm leaderless model, including separate attempts to replicate SHS's investigation and obtain the same documents that SHS had analyzed and dissected. Squitieri counsel's work at playing catch up does not support their appointment under this factor, and certainly not to the exclusion of SHS. *See, e.g., Harris v. Amgen, Inc.*, No. CV 07-5442, 2009 WL 10710472, at *2 (C.D. Cal. Oct. 13, 2009) (in ERISA action, rejecting appointment of Squitieri & Fearon as class counsel where it was "a relative newcomer," having filed later action after counsel in first action performed substantial work developing the case); *In*

---

[4] Mr. Squitieri directly admits that his investigation began in October 2017. Squitieri Decl. ¶ 3. He filed the *Sullivan* action the same month. It is Squitieri counsel, not SHS, which raced to the courthouse in a flurry of filings in October to November 2017. Their attempts to distinguish SHS's cases as ones where the first-filed plaintiffs put in substantial work—in general, lengthy investigations such as SHS's—ring hollow.

*re IndyMac ERISA Litig.*, No. CV 08–04579, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (rejecting appointment of counsel group that included Squitieri & Fearon where it submitted a less detailed description and evidence of its investigation and work on the case).[5]

Finally, Squitieri counsel's speculation that SHS has performed no substantive work since the Court's Order of January 9, 2020, is inaccurate. In the past month, SHS has communicated with its Plaintiffs regarding their discovery obligations. It has followed up on key third-party discovery. It has also corresponded with Squitieri counsel about proceeding with discovery, but Squitieri counsel have declined to respond. *See* Field Reply Decl. ¶ 12.

### B. SHS's Attorneys Possess Greater Relevant Experience and Knowledge

Squitieri counsel improperly discount SHS's expertise in this matter. In reality, SHS has assembled a unique litigation team which brings together accomplished individuals with singular skills. The SHS contingent includes:

(1) *Charles Field*, an ERISA investment and subject matter expert well-versed in the industry and in ERISA law and practice. Mr. Field developed the facts and theory of the case over many months and is currently pursuing several similar cases.

Dkt. 146, Field Decl.; Field Reply. Decl. ¶¶ 16-19. There is no indication that there is anyone with comparable experience and knowhow among Squitieri counsel. Mr. Field is able to apply his invaluable inside perspective to the benefit of the case and the Class. Throughout the suit he has boiled down investment principles and jargon into clear, intelligible terms. Yet, Squitieri counsel want to jettison Mr. Field and SHS from the case and exclude them from representing the Class "in any capacity."

---

[5] *See also George v. Kraft Foods Global, Inc.*, No. 1:07-cv-1713, Dkt. 72 (N.D. Ill. June 5, 2007) (rejecting appointment of Squitieri & Fearon as ERISA class counsel where it filed its complaint six months after first-filed complaint, it had little of value to add as co-lead counsel, and imposition of co-lead counsel arrangement could "lead to needless dispute and increased costs").

(2) *Paul Blankenstein*, a veteran, nationally-recognized ERISA litigator.

Based on the declarations submitted by Squitieri counsel and Mr. Blankenstein, it is clear that Mr. Blankenstein has been lead or co-lead counsel in more ERISA actions than Squitieri counsel combined. Mr. Blankenstein has also filed numerous amicus briefs in ERISA cases, represented clients in Department of Labor ERISA investigations, and co-authored a chapter on ERISA litigation in a leading Practicing Law Institute publication.  *See* Blankenstein Reply Decl. The fact that he has spent most of his career on the defense side only heightens the value of his expertise to this case. As a prominent ERISA lawyer, Mr. Blankenstein was doing the same essential things a plaintiff's lawyer does: engaging with the statute, arguing the facts and claims in particular cases, and pursuing settlement where appropriate. In fact, at SHS, Mr. Blankenstein's background has proven instrumental in anticipating and addressing defense arguments. Rule 23(g)(1)(A)(ii) and (iii) refer to counsel's experience "in handling" similar matters and knowledge "of the applicable law"; there is no suggestion that this knowledge and experience must be accumulated on one side of the bar.

(3) *David Sanford*, Chairman of SHS and a leading employment class action litigator; and

(4) *Kevin Sharp*, a former federal judge with mastery over complex litigation and civil practice and procedure.

While Mr. Field and Mr. Blankenstein have performed the bulk of the work on this matter and engaged in most direct dealings with co-counsel and the Court, Mr. Sanford and Mr. Sharp are involved in overseeing the case and crafting litigation strategy—bringing their extensive class action experience to bear. They will be integrally involved in the case going forward.

Squitieri counsel cannot equal the sum of these parts. While they collectively refer to a handful of ERISA matters they've worked on, there is no indication that any of these cases involve

the particular type of claim at issue here—which SHS's Financial Services Litigation group has spearheaded. Mr. Kurtz indicates that he has experience in ERISA matters but does not identify a single case. Mr. Kaufman names two current cases and one prior case. Mr. Squitieri indicates that he was personally involved in several matters, but he identifies none in which he was counsel in the last ten years. He also indicates that the actions he has worked on were *not* "failure-to-remove-poorly-performing-investment-alternatives" cases. If any of Squitieri counsel's ERISA cases were similar to this one, they would have described the cases accordingly in their Declarations.

Most of Squitieri counsel's experience is in shareholder suits; but, despite dealing—at a general level—with investments, such cases are not the same as ERISA actions. *See, e.g., Harris*, 2009 WL 10710472, at *3 (rejecting Squitieri & Fearon as class counsel where it had less detailed experience in ERISA class actions and its experience was mostly in shareholder suits); *In re Cardinal Heath ERISA Litig.*, 225 F.R.D. 552, 558 (S.D. Ohio 2005).

Squitieri counsel claim "deep knowledge" of general matters related to this litigation. Nothing in their papers confirms this conclusory assertion. Taken as a whole, the SHS team's expertise exceeds that of Squitieri counsel. SHS's attorneys also possess unique experience and attributes that no other lawyers among the firms share. Squitieri counsel's willingness to cast these assets aside speaks volumes about their own motives and undercuts their claims that they are looking out for the Class's interests.

### C. <u>As Lead Counsel, SHS Will Efficiently Marshal its Resources and Harness the Collective Energies of All Counsel for the Benefit of the Class</u>

It does not appear to be disputed that SHS and Squitieri counsel each has the resources to devote to this matter. But SHS, as Lead Counsel, will allocate those resources in a more efficient and economical fashion. This will greatly benefit the Class, as well as the Court.

Under Squitieri counsel's litigation-by-committee model, each firm shares undifferentiated

10

responsibility for the day-to-day conduct of the litigation, for decision-making and strategy, and for coordinating and supervising the efforts of plaintiff's counsel in all areas. No method for resolving disputes is in place; instead, the firms will figure it out among themselves as they go along. A structure in which every firm in the case is equally in charge and must approve all case activities will inevitably lead to conflict and delay. Squitieri counsel unrealistically minimize the potential for conflict under their headless litigation model.

Selecting SHS's attorneys as Lead Counsel thus fulfills the purposes of Rule 23(g). *See also* Fed. R. Civ. P. 1 (all rules "construed, administered and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## II.   Squitieri Counsel's Attacks on SHS and Attempts to Remove SHS from the Action Should Not Defeat SHS's Appointment Under Rule 23(g)

Unable to evade the SHS attorneys' strong track record and qualifications, Squitieri counsel resort to unfounded accusations that SHS is sacrificing the interests of the Class.

First, despite Squitieri counsel's bald supposition, it is not plausible that the *Haskins* Plaintiffs' Rule 23(g) motion for appointment of Lead Counsel will result in delay.  Ultimately, SHS's motion is designed to facilitate the efficient prosecution of the action: appointing attorneys from one firm to lead the action will avoid duplication of effort and provide an expedient mechanism for resolution of disputes among Plaintiffs' counsel team.

Similarly, Squitieri counsel's conjecture that the motion could have prompted GE to suddenly reverse course and oppose class certification is baseless. GE has made clear that it does not care who is appointed as Class Counsel and continues to support the parties' stipulation on class certification. Dkt. 146, Field Decl. ¶ 18.

Any suggestion that SHS will subordinate the Class's interests to its own is specious. SHS has been appointed as Class Counsel in dozens of cases and has routinely had its class settlements

approved as representing highly favorable results for the classes. Within the last week alone, it has received preliminary approval of class action settlements in two cases. *See* n.2, <u>*supra*</u>; *Manlove v. Volkswagen, AG*, No. 1:18-cv-145, Dkt. 134 (E.D. Tenn. Feb. 3, 2020).

Squitieri counsel also suggest that SHS's attorneys are not admitted to this Court and are no longer affiliated with local counsel. This is grossly misleading and untrue. SHS's attorneys are admitted *pro hac vice* under Local Rule 83.5.3. Dkts. 53, 127. They were sponsored by a member of the bar of this Court, SHS attorney Andrew Miller, who has made an appearance and remains counsel of record. *See* Dkts. 48-52, 124; Local Rule 83.5.3(e)(2). Mr. Miller is a senior litigation counsel with SHS; is a 2011 Harvard Law graduate; is a member of the Massachusetts bar and the bar of this Court; and is a former prosecutor in Boston.[6]

Finally, Squitieri counsel insinuate that SHS has engendered a "conflict" within the Class. It is not clear what this "conflict of interest" would be. SHS only seeks appointment as Lead Counsel, with the other firms as co-counsel (Dkt. 155); it is Squitieri counsel which aims to exclude half of the Plaintiffs and their attorneys from <u>*any*</u> meaningful role or involvement in the action.

Squitieri counsel's invocation of *Lou v. Ma Labs* is misleading and incomplete. There, the court concluded that a law firm such as SHS could not represent two separate classes against the same defendant—an issue it raised *sua sponte*. The court soon indicated that it would consider revisiting its order and would entertain additional briefing on whether a motion for reconsideration would be appropriate (*Lou* Dkt. 441, Feb. 27, 2014). At the court's invitation, SHS submitted supplemental briefing, shepherding extensive authority to show the court's plain legal error. The case settled before the court could rule on the matter and formally undo its prior order.

---

[6] There is no requirement that local counsel maintain an office in this District. *See* Local Rules 83.5.3(e)(2), 83.5.1, and 5.2(b)(1). This is particularly so in an ECF case governed by Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.4.

Robbins Geller should well know from its own recent experience that this scenario does not present a conflict in non-limited fund cases. *Mortimer v. Diplomat Pharmacy, Inc.*, No. 19 C 1735, 2019 WL 3252221, at \*5-6 (N.D. July 19, 2019) (declining to hold that Robbins Geller had a disqualifiable conflict of interest where it represented classes against the same defendant in two cases but it did not appear to be a "limited fund scenario" where they would be competing for the same finite pool of assets). As Squitieri counsel is well aware, *Lou* is a legal outlier (that may likely have been reconsidered) that has no bearing on SHS's ability to represent a class.

In contrast, Lee Squitieri and Squitieri & Fearon have actually been disqualified for a conflict of interest. *Piven v. Harwood Feffer, LLP*, No. 14 Civ. 6601, 2015 WL 1268002 (S.D.N.Y. Mar. 11, 2015).

Similarly, Robbins Geller's record is hardly unblemished. *See, e.g.*: (1) *City of Livonia Employees Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 761-62 (7th Cir. 2013) (noting firm's history of "misleading allegations, concerning confidential sources, made to stave off dismissal of a securities-fraud case" and collecting cases), 306 F.R.D. 175 (N.D. Ill. 2014) (imposing sanctions); (2) *Plumbers Union Local No. 12, Pension Fund v. Ambassadors Group, Inc.*, No. CV–09–214, 2012 WL 847275 (E.D. Wash. Feb. 28, 2012), 2012 WL 1906384 (E.D. Wash. May 25, 2012) (excessive billing and expenses, including "possible misrepresentations," in "direct contradiction" to the firm's professed commitment "to practicing law with the highest level of integrity and in an ethical and professional manner."); (3) *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 155-57 (S.D.N.Y. 2010), 2011 WL 1487090, at \*9 (S.D.N.Y. Apr. 15, 2011) (failure to disclose that plaintiff-client had another behind-the-scenes personal lawyer with a problematic relationship to plaintiff); (4) *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, No. 10 C 7031, 2014 WL 1847833, at \*8 (N.D. Ill. May 8, 2014) (noting firm's history of frivolous

complaints); (5) *In re Kosmos, Inc., Secs. Litig.*, 299 F.R.D. 133, 148-50 (N.D. Tex. 2014) (lawyer-driven litigation in which firm generated the suit and plaintiff was largely uninvolved).[7]

## CONCLUSION

SHS is committed to vigorously representing the Class and obtaining the best results for the Class Members and the Plan. The SHS contingent has the experience, know how, and human and financial capital to vigorously prosecute this matter.

Because this litigation would benefit from a single leader, the *Haskins* Plaintiffs seek appointment of their attorneys from SHS as Lead Counsel for the Class. SHS's attorneys possess the qualifications, skills, and experience needed to serve in this role. They have investigated and developed this case from its genesis, nearly a full year before Squitieri counsel first became involved.

For all the foregoing reasons, SHS should be appointed as lead class counsel in this case.

---

[7] *See also In re TD Banknorth Shareholders Litig.*, 938 A.2d 654 (Del. Ch. 2007) (in shareholder case, rejecting Gardy & Notis class settlement based on "unreasonable" and "inadequate" provisions).

Dated:  February 6, 2020

Respectfully submitted,

**SANFORD HEISLER SHARP, LLP**

*/s/ David W. Sanford*
David W. Sanford (admitted *pro hac vice*)
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
T: (646) 402-5650
F: (646) 402-5651
dsanford@sanfordheisler.com

Kevin Sharp (admitted *pro hac vice*)
611 Commerce Street, Suite 3100
Nashville, TN 37203
T: (615) 434-7000
F: (615) 434-7020
ksharp@sanfordheisler.com

Paul Blankenstein (admitted *pro hac vice*)
1666 Connecticut Avenue NW, Suite 310
Washington, D.C. 20009
T: (202) 499-5200
F: (202) 400-5199
pblankenstein@sanfordheisler.com

Charles Field (admitted *pro hac vice*)
655 W. Broadway, 17th Floor
San Diego, CA 92101
T: (619) 577-4251
F: (619) 577-4250
cfield@sanfordheisler.com