UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE GE ERISA LITIGATION | *<br>*<br>*<br>*<br>* | Civil Action No. 1:17-cv-12123-IT |

MEMORANDUM & ORDER

January 26, 2022

TALWANI, D.J.

      This is an action brought by participants in a 401(k) plan against General Electric Company ("GE") and related institutional and individual Defendants. Plaintiffs allege breaches of fiduciary duties and prohibited transactions in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 18 § 1001, *et seq*. Second Consol. Am. Compl. ("Second Am. Compl.") ¶ 1 [#54]. Pending before the court is Plaintiffs' Motion to Compel [#203] certain documents that Defendants have withheld based on the attorney-client privilege. Plaintiffs seek documents relating to GE's sale of GE Asset Management Inc. ("GEAM"), contending that Defendants have not met their burden of demonstrating that the documents concern legal, rather than business, advice, and contending further, as to some of these documents, that any privilege was waived when the documents were shared with third-party Credit Suisse. Plaintiffs also seek documents relating to plan administration of the GE Retirement Savings Plan (the "Plan"), contending that the attorney-client communications at issue are with the plan fiduciaries and are thus subject to the fiduciary exception to the attorney-client privilege. Defendants oppose the motion, contending that all the documents were properly withheld as attorney-client privileged; that Plaintiffs' claim that the documents related to the sale of GEAM's assets contain business rather than legal advice is speculative and that the documents

instead concern "quintessentially legal" topics; that Credit Suisse's involvement in some communications was necessary for legal advice and therefore did not waive the privilege; that communications with individuals wearing multiple hats are protected where the advice was for their own benefit and in their non-fiduciary capacities; and that communications on topics other than the Plan's governance documents reflect advice related to litigation exposure and therefore fall outside of the fiduciary exception.

The Motion [#203] is granted in part. Defendants shall comply with Plaintiffs' requests as limited by this order, and as to any documents that Defendants continue to seek to withhold under an assertion of the attorney-client privilege, Defendants shall provide a revised privilege log (and further declarations) clarifying their bases for withholding the documents in light of this order.

## I. Discussion

### A. Attorney-Client Privilege

The essential elements of attorney-client privilege, as described by Wigmore and endorsed by the First Circuit, are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)).

The rationale behind the attorney-client privilege is that protecting client communications "encourages disclosures by the client to the lawyer that facilitate the client's compliance with the law and better enable the client to present legitimate arguments should litigation arise." Id.

2

Although the privilege is "well-established," id., it "is limited, in that it 'applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client,'" Am.'s Growth Cap., LLC v. PFIP, LLC, 2014 WL 1207128, at *2 (D. Mass. Mar. 24, 2014) (quoting In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001) (citing Fisher v. United States, 425 U.S. 391 (1976))).

A party withholding otherwise discoverable information on a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The party asserting attorney-client privilege also bears the burden of showing it applies. Smith v. Jefferson Pilot Fin. Ins. Co., 245 F.R.D. 45, 47 (D. Mass. 2007).

B. *Documents Concerning the Sale of GEAM*

Plaintiffs seek to compel Defendants to produce documents concerning the sale of GEAM, contending that the privilege log does not establish that the communications concern only legal, as opposed to business, advice. Mot. to Compel 7 [#203]. Specifically, Plaintiffs argue that Documents W1, W101-W105, W108-108.01, W114-W128.01, W132-W132.01, W134-W135, W137-W144, W150-W318.02, W320 and W327-W329 are being improperly withheld. Id. at 7 n.4. Defendants contend that they produced all documents containing business advice and that the withheld documents contain legal advice and are privileged. Opp'n 3-7 [#207].

For the attorney-client privilege to apply, communications "'must call upon the attorney in his or her capacity as a professional legal adviser.'" Am.'s Growth Cap., LLC, 2014 WL 1207128, at *2 (citing Texaco Puerto Rico, Inc. v. Dep's of Consumer Affairs, 60 F.3d 867, 884

3

(1st Cir. 1995)). "Thus, while the privilege extends to communications between corporate officers and in-house counsel, such communications are only protected if they were made to the individuals in their capacities as lawyers, not as business strategists or negotiators." Id. (citing first Upjohn Co. v. United States, 449 U.S. 383, 389-90 (1981) and then United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007)). Put simply, "business advice, such as financial advice or discussions concerning business negotiations, is not privileged[.]" Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 511 (D.N.H. 1996) (collecting cases).

      Defendants submitted declarations from (1) Matthew Simpson, the former general counsel and executive vice president of GEAM and a Plan fiduciary; (2) Alison Douglass, outside counsel from Goodwin Procter; and (3) Rory O'Halloran, outside counsel from Shearman & Sterling, in support of their argument that the withheld documents concerning the sale of GEAM contain legal advice. The Simpson Declaration [#211] states that during the GEAM sale, Simpson and other in-house GE counsel and external counsel provided legal advice to GE regarding the sale of GEAM's assets, on a range of topics, including compliance with regulations implicated by the sale, legal issues raised during the bidding process, and potential legal ramifications from how entities would be structured post-sale and that these legal issues related to corporate interests and not fiduciary issues. Id. at ¶ 8. The Douglass Declaration [#208] states that Douglass's law firm represented GE in its sale of GEAM assets to State Street and that the law firm "provided legal advice to GE in its corporate capacity and in its role as sponsor and settlor of various employee benefit plans regarding ERISA issues arising from or relating to the [sale of GEAM to State Street]." Id. at ¶ 5. Similarly, the O'Halloran Declaration [#212] states that O'Halloran's law firm represented GE in its sale of GEAM assets to State Street and that the

4

law firm "provided legal advice to GE regarding the [sale of GEAM to State Street]." Id. at ¶ 4.

The declarations do not connect this work, however, to any specific privilege log entries. Moreover, the Simpson Declaration [#211] does not list the "other in-house GE counsel" who provided legal advice to GE regarding the sale of GEAM. Simpson Decl. ¶ 8 [#211]. As for the Douglass Declaration [#208] and O'Halloran Declaration [#212], both state that outside counsel provided legal advice to GE with respect to the sale of GEAM without identifying the specific counsel who provided legal, rather than business, advice.

The privilege log entries for documents the parties have identified as relating to the sale of GEAM also fail to provide context as to the role of the specific individuals sending, receiving or associated with the communication. See, e.g., Privilege Log Entry for Document W132 (omitting detail as to who originally provided legal advice and to whom). In sum, the court cannot discern the roles played by GE's in-house counsel or by outside counsel in withheld communications. See, e.g., Privilege Log Entry for Document W226 (omitting explanation of outside counsel's involvement in the communication while relying on outside counsel for privilege claim).

Because the court finds the privilege log insufficient, and a tandem reading of the declarations and the privilege log descriptions does not remedy the issue, the court orders Defendants to produce the documents, except those for which Defendants provide additional context in the privilege log descriptions and the declarations (including the role played by specific attorneys whose communications are at issue), or both, so that the court can determine that the communications related to confidential legal advice sought from a lawyer.

C. *Documents that Include Credit-Suisse*

Plaintiffs also seek to compel a subset of the documents concerning the sale of GEAM where the documents were disclosed to employees of third-party financial advisor, Credit Suisse. Plaintiffs argue Defendants failed to demonstrate that "communications with Credit Suisse were 'made for the purpose of rendering legal advice, rather than business advice,'" Mot. to Compel 9 [#203] (quoting Dahl v. Bail Capital Partners, 714 F. Supp. 2d 225, 228 (D. Mass. 2010)), because Credit Suisse's financial expertise and industry experience do not demonstrate that Credit Suisse's financial advisors were necessary to the provision of *legal* advice, Reply 5 [#215]. Defendants state that because the specialized advice Credit Suisse was retained to provide concerning the sale of the GEAM was necessary for GE's attorneys to provide legal advice to GE, Credit Suisse's presence on communications does not waive attorney-client privilege. Opp'n 7 [#207].

"Generally, the attorney-client privilege applies only to communications between an attorney and the client, and the disclosure of such communications to a third-party undermines the confidentiality of the communications or waives the privilege." Columbia Data Prods., Inc. v. Autonomy Corp. Ltd., 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012) (citing Cavallaro, 284 F.3d at 246); see also In re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2003). There are, however, two exceptions to this rule:

> (1) The first [exception] concerns third parties who are employed to assist a lawyer in rendering legal advice. To come within this exception, three legal elements must be satisfied: (1) "the third-party communications must be necessary, or at least highly useful, for the effective consultation between the client and the lawyers which the privilege is designed to permit[,]" (2) the third-party must play "an interpretive role. In other words, the third party's communication must serve to translate information between the client and the attorney[,]" and (3) "the third-party's communication must be made for the purpose of rendering legal advice, rather than business advice."

6

Hill v. State Street Corp., 2013 WL 6909524, at *3 (D. Mass. Dec. 30, 2013) (citing Cavallaro, 284 F.3d at 247 and Dahl, 714 F. Supp. 2d at 227-28). The second exception extends the attorney-client privilege to communications between independent contractors and counsel where the "'outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice.'" Id. at *4 (quoting Cottillion v. United Refining Co., 279 F.R.D. 290, 299 (W.D. Pa. 2011)).

Defendants submitted declarations from counsel describing the roles Credit Suisse financial advisors played in the GEAM transaction. See Simpson Decl. ¶ 9 [#211] (in house and outside counsel for GE "communicated our legal advice with employees of Credit Suisse so that we could take advantage of their subject matter expertise in formulating and reformulating our legal advice to GE"). Rory O'Halloran, an experienced mergers and acquisitions attorney, stated that he relied on outside financial advisors in a significant portion of mergers or acquisition transactions and that in the GEAM transaction, O'Halloran and other Shearman & Sterling attorneys "communicated with Credit Suisse financial advisors regarding our legal advice, in strict confidence, where doing so was necessary for the Credit Suisse financial advisors to facilitate our provision of legal advice to GE." O'Halloran Decl. ¶ 6 [#212]. This advice related to asset purchase agreements, revisions proposed by bidders, and letters explaining how to submit bids. Id. at ¶ 7.

From the privilege log, however, the court cannot determine whether Credit Suisse's financial advisors were necessary to the provision of legal advice.[1] Some documents including

---

[1] Plaintiffs' Motion to Compel [#203] argues that Defendants are improperly withholding the following documents because Credit Suisse is copied on the communications: Documents W115-W117.01, W135, W150-W154.01, W156-W168.01, W186, W190-W190.01, W194-W197.01, W201-W207.01, W210-W210.01, W212-W212.01, W214-W214.01, W217-W221.01,W223-W223.01, W224-W225.01, W226-W228.01, W230-W230.01, W237, W247-W255.03,W257-

Credit Suisse employees have privilege log descriptions consistent with attorney-client privileged communications. See, e.g., Documents W214, W262, W274 (privilege log entries state communications include "[l]egal advice regarding draft agreements relating to the potential sale of GEAM"). However, it is unclear from the log whether Credits Suisse's presence on the communication was necessary to the provision of that legal advice. Also, the O'Halloran Declaration [#212] suggests Credit Suisse financial advisors provided business advice in addition to advice necessary for counsel to provide legal advice to GE. See O'Halloran Declaration ¶ 8 [#212] ("Shearman & Sterling attorneys relied on the Credit Suisse financial advisors to run financial models to determine the relative impacts of the purchase price adjustment and ensure that the resulting changes to the relevant provision in the agreement accurately captured what bidders had agreed to in negotiations with GE and Credit Suisse."); id. at ¶¶ 7, 9 (explaining Credit Suisse was asked to provide input on draft agreements prepared by outside counsel and that outside counsel relied on Credit Suisse financial advisors to draft or review issue lists to ensure lists accurately reflected status of the bidding negotiations so attorneys could advise GE regarding potential legal issues).

Defendants are ordered to produce responsive documents according to the following instructions. First, for documents where the role of Credit Suisse employees was to provide factual information or business advice relevant to the sale of GEAM, e.g., data from financial models or information communicated to Credit Suisse from bidders, Credit Suisse's presence waives attorney-client privilege because Credit Suisse employees were not called on to provide advice necessary for counsel to provide legal advice to GE, and these documents must be

---

W260.01, W262-W262.01, W264-W264.01, W288-W290, W274, W279, W280-W281,W284-W286, W288-W290, W291-W291.01, and W299-W299.02. Mot. to Compel 9 n.5 [#203].

produced. Second, for documents in which Credit Suisse's financial advisors provided information to counsel necessary for counsel to provide legal advice concerning the sale of GEAM, e.g., feedback on legal issues raised in drafts of documents attorneys shared with client, those communications remain privileged despite Credit Suisse's presence. Third, for documents in which Credit Suisse employees are copied on otherwise privileged communications, but where their role is unclear, the presence of Credit Suisse employees waives privilege, and the documents must be produced.

   D. *Documents Falling Under the Fiduciary Exception*

  Plaintiffs argue that Defendants improperly withheld documents Plaintiffs are entitled to under the fiduciary exception to attorney-client privilege including (1) investment plan documents; (2) documents related to committee charter amendments; and (3) documents withheld under the liability exception. Mot. to Compel 10-16 [#203]; Reply 7-11 [#215]. Defendants contend they satisfied their obligations under the fiduciary exception and only withheld documents relating to settlor duties and anticipated litigation. Opp'n 14-20 [#207].

  Where attorney-client privilege is invoked in the context of an ERISA dispute, "the fiduciary exception provides that an employer acting in the capacity of an ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." Smith, 254 F.R.D. at 47 (citing United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999)). "'The fiduciary exception is rooted in two distinct rationales. First, some courts have held that the exception derives from an ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration.'" Id. at 48 (quoting Mett, 178 F.3d at 1063). "These courts reason that '[a]n ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan[,]' including 'any

communications with an attorney that are intended to assist in the administration of the plan.'" Id. (quoting In re Long Island Lighting Co., 129 F.3d 268, 271-72 (2d Cir. 1997)). "Consequently, the 'fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries.'" Id. (quoting Long Island Lighting, 129 F.3d at 272).

The second rationale is focused "'on the role of the trustee and [endorses] the notion that, as a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.'" Id. (quoting Mett, 178 F.3d at 1063). Courts adopting this rationale have found that "'[t]he very intention of the communication is to aid the beneficiaries' and the fiduciary 'cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.'" Id. (quoting Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co., 543 F. Supp. 906, 909 (D.D.C. 1982)).

Regardless of the rationale, courts have found that the fiduciary exception "does not defeat the attorney-client privilege with respect to communications between a fiduciary and its attorneys on non-fiduciary matters." Id. (citing Long Island Lightning, 129 F.3d at 271) (defendant's "ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the [defendant] owed a fiduciary obligation to the beneficiaries"). Thus, "'where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries . . . the attorney-client privilege remains intact.'" Id. (quoting Mett, 178 F.3d at 1064).

In support of their argument that these withheld documents do not fall under the fiduciary exception, Defendants submitted declarations from counsel. Matthew Simpson "believed it was

10

necessary to provide advice [to Plan fiduciaries concerning their potential exposure to litigation] because prior litigation had been filed against GE and the Plan's fiduciaries concerning the Plan and other companies had been sued regarding investments made available in their 401(k) plans." Simpson Decl. ¶ 4 [#211]. Simpson also states that he instructed Jerry Wald and Elizabeth Schultz, corporate counsel for GE, to review and comment on documents, including the Investment Policy Statement, GEAM Committee charters, and investment directives relating to the Plan, "on behalf of GE and for GE's benefits, given that GE was the Plan sponsor and could face litigation risk with respect to the Plan." Id. at ¶ 6. Simpson states he did this in his capacity as GEAM's General Counsel, "focused on the protection of GE's corporate interest as the Plan sponsor, rather than as a Plan fiduciary or as a GEAM corporate attorney." Id.

Schutz and Wald also submitted declarations, which state they both provided legal advice for the benefit of GE in its capacity as the settlor of an employee benefit plan. Schultz Decl. ¶ 4 [#210]; Wald Decl. ¶ 4 [#209]. Wald and Schultz state they reviewed drafts of the Investment Policy Statement in 2011/2012 to perform "a corporate legal litigation risk review for GE" at the behest of Simpson "on behalf of and for the benefit of GE." Schultz Decl. ¶ 7 [#210]; Wald Decl. ¶ 6 [#209]. Both attorneys state this review was necessary given the prevalence of 401(k) plan related litigation, GE's obligations under a 2008 settlement, and in order to provide advice as to whether parts of the Investment Policy Statement would necessitate an amendment to the Plan. Schultz Decl. ¶ 8 [#210]; Wald Decl. ¶ 7 [#209]. Schultz also states that Amy Moore, outside counsel from Covington and Burling, provided "advice for the benefit of GE in its Plan settlor role regarding whether the documents . . . accurately reflected the Plan design set forth by GE in the Plan Document and whether they posed any litigation risk to GE in that capacity." Schultz

11

Decl. ¶ 9 [#210].[2]

      1.      Settlor v. Fiduciary Duties

            i.      Legal Standard

"'Fiduciary functions include matters of plan management and administration, such as discretionary decisions regarding investment or liquidation of plan assets, communications to plan beneficiaries, and plan benefits claims review." Hill, 2013 WL 6909524, at *2 (quoting Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. 488, 496 (M.D.N.C. 2008) (internal citation omitted)); see also Tibble v. Edison Int'l., 575 U.S. 523 (2015). Plan creation, design, amendment, and termination, however, are settlor functions and do not implicate the fiduciary exception. Krueger v. Ameriprise Fin., Inc. LLC, 2014 WL 12597432, at *11 (D. Minn. May 7, 2014) ("when employers adopt, modify, or terminate plans that provide pension benefits, they do not act as fiduciaries, but are analogous to the settlors of a trust") (internal citations omitted).

When it comes to asserting attorney-client privilege,

> "[t]he plan administrator may assert attorney-client privilege as to communications between the administrator and its attorneys on non-fiduciary matters, such as when the communications relate to plan sponsor or 'settlor' functions of adopting, amending, or terminating an ERISA plan, and not to fiduciary functions of managing or administering the plan."

Hill, 2013 WL 6909524, at *2 (quoting Tatum, 247 F.R.D. at 493).

> [W]hen the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on *non*-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters.

---

[2] Douglass states further that Goodwin attorneys conducted a "laborious privilege review" and that Defendants have produced over 1000 emails including attorneys and hundreds of documents Defendants determined fell within the fiduciary exception. Douglass Decl. ¶ 7 [#208]. By way of example, Douglass states Defendants produced to Plaintiffs documents that included Simpson and Moore, and documents from GE Benefits Plan Investment Committee Meetings where counsel provided legal advice. Id.

Long Island Lighting Co., 129 F.3d at 272 (emphasis in original).

      ii.      Analysis

The court finds the privilege log descriptions insufficiently specific to determine whether these withheld documents relate exclusively to settlor functions and were properly withheld. Defendants provided the same, generic language for these withheld documents: "Reflects legal advice regarding settlor-directed governance structure," Documents W9, W15, W22; "Legal advice regarding settlor-directed governance structure," Documents W15.01, W44, W54, W319, W321; and "Email chain reflecting legal advice regarding settlor-directed governance structure," Document W10. "Governance structure" is too vague a term for the court to assess whether these communications relate to fiduciary functions, including Plan administration, and should be produced to Plaintiffs, or whether these documents pertain to Plan creation, design, amendment, or termination, and were properly withheld under the settlor exception. Ultimately, it is the function to which the communication relates, rather than the intended beneficiary of the communication, that determines whether the fiduciary exception applies.

Defendants are instructed to review these withheld documents and to produce all responsive documents that (1) describe or communicate changes in plan benefits to beneficiaries, (2) describe or discuss Plan investment strategies, (3) address the Plan's compliance with its statutory obligations, or (4) concern any other aspects of Plan administration. See Cobell v. Norton, 212 F.R.D. 24, 29 (D.D.C. 2002) (citing first Martin v. Valley National Bank of Arizona, 140 F.R.D. 291, 308 (S.D.N.Y. 1991) and then Washington Star Co., 543 F. Supp. at 909 n.5) ("[A]dvice concerning legal compliance, alternatives, or strategy is part of the ordinary business of a trust and a trustee, and such legal communications and advice permit no claim of privilege. A trustee has no legitimate need to shield his actions from those whom he is obligated

13

to serve") (internal citation omitted); see also Solis v. Food Employers Labor Relations Ass'n, 644 F.3d 221, 231 (4th Cir. 2011) (affirming district court's decision ordering funds to disclose "Board of Trustee minute meetings, handwritten notes distributed and taken during the meetings, and correspondence that concerned the Madoff-related investments" because these documents "appear[ed] clearly to relate to the Funds' administration, information which ERISA trustees have a fiduciary obligation to disclose in response to a subpoena from plan beneficiaries provided it does not involve a trustee's own legal defense"). Defendants may withhold documents that deal exclusively with settlor functions and, to the extent documents address both fiduciary and settlor functions, Defendants must produce redacted documents. Finally, as to documents Defendants maintain should be withheld, Defendants must update their privilege log to describe with specificity the settlor function involved in each communication so Plaintiffs (and if necessary, the court) can adequately assess Defendants' claim of privilege.[3]

    2.    Anticipated Litigation

Turning next to documents Plaintiffs argue Defendants improperly withheld under the liability exception to the fiduciary exception, Mot. to Compel 14-16 [#203], Plaintiffs contend these documents should be produced because they (1) predate this litigation; (2) concern Plan administration, not personal liability for fiduciaries; and (3) address general litigation risks, id.; see also Reply 10-11 [#215], and therefore do not fall under the liability exception.

Defendants contend they properly invoked the liability exception because the withheld documents (1) seek advice for personal defense of Plan fiduciaries; (2) address legal obligations under GE's prior settlement; and (3) concern GE's reasonable anticipation of litigation in light of

---

[3] The liability exception, discussed in detail in the subsequent section, is distinct from the settlor exception. Therefore, whether one of the purposes of the communication was general risk mitigation has no bearing on whether the document qualifies under the settlor exception.

14

the frequency of 401(k) lawsuits during the relevant time period. Opp'n 18-20 [#207].

        i.        Legal Standard

"The critical inquiry with respect to the liability exception is whether there exists a divergence of interests and a threat of litigation such that it is warranted for the fiduciary to obtain confidential advice from counsel and assert attorney-client privilege on the matter against the beneficiary." Hill, 2013 WL 6909524, at *3 (internal citation and quotation omitted). This exception is narrow, and courts "will not recognize the existence of an attorney-client privilege except where a trustee obtained legal advice *solely* to protect himself personally from . . . civil or criminal liability, an objective that is inherently inconsistent with his or her fiduciary capacity." Cobell, 212 F.R.D. at 30 (emphasis in original). Moreover, "when it is asserted that the communication consisted of legal advice for the fiduciary's own benefit," courts focus on "whether the litigation involving the fiduciary is pending or imminent, as opposed to a general fear of liability." Carr v. Anheuser-Busch Companies, Inc., 791 F. Supp. 2d 672, 675 (E.D. Mo. 2011), aff'd, 495 F. App'x 757 (8th Cir. 2012) (citing Black v. Bowes, 2006 WL 3771097 at *3 (S.D.N.Y. Dec. 21, 2006)). For that reason, "the time period in which withheld communications took place can be highly informative as to their purpose." Black, 2006 WL 3771097, at *3.

The cases discussing the liability exception

> "mark out two ends of the spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact."

Hill, 2013 WL 6909524 at *3 (quoting Mett, 178 F.3d at 1064).

15

ii.  Analysis

The court has reviewed the privilege log descriptions where Defendants invoke the liability exception and finds the descriptions too vague or imprecise to demonstrate that the liability exception applies. The entries state the documents were withheld because they contain "legal advice regarding mitigation of litigation risk for GE." See Documents W8; W14.02; W53-W53.02; W66; W68.01; W81-W82; W92-W93; W100; W145-W147.

First, the fact that these documents predate the filing of this suit weighs in favor of Plaintiffs' argument because general concerns prior to the filing of the suit do not implicate the liability exception and, instead, implicate a fiduciary duty to guard against general litigation risks. Second, the court is not persuaded that the prevalence of other 401(k) litigation during the relevant time period is a specific enough litigation risk to allow Defendants to withhold such documents because, again, guarding against a generalized risk of litigation is a fiduciary duty and does not create a divergence between the interests of the fiduciaries and Plan beneficiaries. Moreover, it may often be the case that litigation against other ERISA entities is prevalent; if a fiduciary could point to such litigation as creating a liability risk that would remove communications from the fiduciary exception, the exception would cease to function as intended. Third, while legal advice concerning GE's obligations under its prior settlement agreement would present a specific litigation risk that could require privileged communication, and the court would likely find such documents attorney-client privileged, the court is unable to identify any such documents given the limited privilege log descriptions.

Accordingly, Defendants shall produce records from this privilege log withheld solely on the basis of the liability exception, unless the document references the previous settlement

agreement. Defendants may withhold the document and provide a more detailed log to support the litigation privilege, subject to further challenge by the Plaintiffs as appropriate.

## II.  Conclusion

For the aforementioned reasons, Plaintiff's Motion to Compel [#203] is ALLOWED IN PART and DENIED IN PART.

IT IS SO ORDERED.

January 26, 2022                                        /s/ Indira Talwani
                                                        United States District Judge