UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re GE ERISA LITIGATION | ) | Master File No. 1:17-cv-12123-IT |
| | ) | |
| | ) | CLASS ACTION |
| This Document Relates To: | ) | |
| | ) | SETTLEMENT AGREEMENT |
| ALL ACTIONS. | ) | |
| | ) | |
| | ) | |

This Settlement Agreement, dated September 29, 2023 (the "Settlement Agreement"), is made and entered into by and among: (i) Plaintiffs Maria LaTorre, Robyn Berger, Brian Sullivan, Frank Magliocca, Melinda Stubblefield, Kristi Haskins, Laura Scully, Donald J. Janak, John Slatner, and Chip Knight ("Plaintiffs") (on behalf of themselves and each Class Member), by and through their counsel of record in the above-captioned action ("Action"); and (ii) General Electric Company ("GE" or the "Company"), GE Asset Management ("GEAM"), Benefit Plans Investment Committee ("BPIC"), GEAM Committee, Carol Anderson, Jeffrey Bornstein, Matthew Cribbins, John Flannery, Puneet Mahajan, Trevor Schauenberg, Keith Sherin, Brian Worrell, Dmitri Stockton, George Bicher, Paul Colonna, Michael J. Cosgrove, Gregory Hartch, Jessica Holscott, Ralph Layman, Matthew J. Simpson, Donald W. Torey, John Walker, David Wiederecht, Tracie Winbigler, Matthew Zakrzewski, Jeanne M. LaPorta, the GE Pension Board, the GE Board of Directors, and nominal defendant GE Retirement Savings Plan (collectively, "Defendants"), by and through their counsel of record in the Action (defined below).[1]  The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the released claims, subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

1.    **ARTICLE I**

**DEFINITIONS**

1.1    "Action" means the civil action captioned *In re GE ERISA Litigation*, No. 1:17-cv-12123-IT, pending in the United States District Court for the District of Massachusetts.

---

[1]    Except as otherwise specified, all capitalized terms shall have the meanings set forth in this Settlement Agreement.

1.2     "Active Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is eligible to make contributions to the account.

1.3     "Alternate Payee" means a person, other than an Active Participant, Inactive Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.4     "Attorneys' Fees and Expenses" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the litigation expenses incurred by Class Counsel in connection with the Action, which shall be recovered from the Settlement Fund.

1.5     "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of an Active Participant, Inactive Participant, or Former Participant, other than an Alternate Payee.  A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.6     "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. §1715.

1.7     "Class" means a non-opt out class pursuant to Fed. R. Civ. P. 23(b)(1) comprised of all participants in the GE Retirement Savings Plan (f/k/a General Electric Savings and Security Program), as well as participants whose accounts were transferred from the GE Retirement Savings Plan and merged into a successor plan created in connection with the spinoff of a GE company (collectively, the "Plan") from September 26, 2011 to August 3, 2023, who were invested in one or more of the GE Funds through the Plan.  Excluded from the Class are (a) Defendants, (b) any Named Fiduciaries of the Plan between September 26, 2011 and July 1, 2016, (c) the officers and directors of GE and GEAM between September 26, 2011 and July 1, 2016, and (d) members of

- 2 -

the immediate families and the legal representatives, heirs, successors or assigns of any such excluded party.

1.8     "Class Counsel" means Evan J. Kaufman of Robbins Geller Rudman & Dowd LLP, Orin Kurtz of Gardy & Notis, LLP, Lee Squitieri of Squitieri & Fearon, LLP, and Charles H. Field of Sanford Heisler Sharp, LLP.

1.9     "Class Member" means a member of the Class.

1.10    "Class Period" means September 26, 2011 through August 3, 2023, inclusive.

1.11    "Class Representatives" means the Plaintiffs in this Action, Maria LaTorre, Robyn Berger, Brian Sullivan, Frank Magliocca, Melinda Stubblefield, Kristi Haskins, Laura Scully, Donald J. Janak, John Slatner, and Chip Knight.

1.12    "Confidentiality Order" means the Order for the Production and Exchange of Confidential Information entered on August 22, 2019, in the Action.

1.13    "Consolidated Actions" means *Sullivan v. General Electric Company*, No. 17-12123-IT (D. Mass.), *Powell v. General Electric Company*, No. 17-CV-12139-IT (D. Mass.), *LaTorre v. General Electric Company*, No. 17- CV-12267-IT (D. Mass.), and *Haskins v. General Electric Company*, No. 18-CV-10234-IT (D. Mass.), individually or collectively, as consolidated by the Court on March 16, 2020 and captioned *In re GE ERISA Litigation*, No. 1:17-cv-12123-IT (D. Mass.).

1.14    "Court" means the United States District Court for the District of Massachusetts.

1.15    "Defendants" means GE, GEAM, BPIC, GEAM Committee, Carol Anderson, Jeffrey Bornstein, Matthew Cribbins, John Flannery, Puneet Mahajan, Trevor Schauenberg, Keith Sherin, Brian Worrell, Dmitri Stockton, George Bicher, Paul Colonna, Michael J. Cosgrove, Gregory Hartch, Jessica Holscott, Ralph Layman, Matthew J. Simpson, Donald W. Torey, John

- 3 -

Walker, David Wiederecht, Tracie Winbigler, Matthew Zakrzewski, Jeanne M. LaPorta, the GE Pension Board, the GE Board of Directors, and nominal defendant the Plan.

1.16    "Defendants' Counsel" means Goodwin Procter LLP.

1.17    "Defendants' Released Claims" means all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Action or in any court or forum, by Defendants against Plaintiffs or any Class Members, or their attorneys (including Class Counsel), which arise out of or relate in any way to the institution, prosecution or settlement of the Action, except for claims to enforce the Settlement Agreement.

1.18    "Dismissed Defendants" means Jamie Miller, Geoffrey Beattie, John Brennan, James Cash, Sharon Daley, Marjin Dekkers, Francisco D'Souza, Ann Fudge, Jan Hauser, Susan Hockfield, Jeffrey Immelt, Andrea Jung, Alan Lafley, Kelly Lafnitzegger, Robert Lane, John Lynch, Rochelle Lazarus, James Mulva, Sam Nunn, Susan Peters, Roger Penske, James Rohr, John Samuels, Mary Schapiro, Robert Swieringa, James Tisch, Douglas Warner, Sebastien Bazin, Greg Bouleris, Edward Garden, Peter Henry, Dan Janki, Raghu Krishnamoorthy, Vaidheesh Krishnamurti, Risa Lavisso-Mourey, Lowell McAdam, Steven Mollenkopf, Scott Silberstein, and Pamela Westmoreland.

1.19    "Effective Date" means one business day following the later of: (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all

- 4 -

proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.20    "Entitlement Amount" means that portion of the Net Settlement Fund payable to an individual Class Member entitled to a share of the Net Settlement Fund, as determined according to the procedures described in Article V herein.

1.21    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.22    "Escrow Account" means an account at an established financial institution or institutions that is established for the deposit of the Settlement Amount and amounts relating to it, such as income earned on the investment of the Settlement Amount.

1.23    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP, which will serve as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement.

1.24    "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.25    "Final Judgment and Order of Dismissal with Prejudice" or "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form attached hereto as Exhibit B.

1.26    "First Amended Complaint" means the document captioned Amended Class Action Complaint filed at ECF 5 on November 1, 2017 in this Action.

1.27    "Former Participant" means any Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.28    "Former Participant Rollover Form" means the form described generally in Section 5.3 herein, substantially in the form attached as Exhibit A-2 hereto.

1.29    "Former Participant Rollover Form Deadline" means a date that is no later than ten (10) calendar days before the Fairness Hearing.

1.30    "GE Funds" means the following five funds: (i) GE Institutional Strategic Investment Fund, a/k/a State Street Institutional Strategic Investment Fund ("Strategic Investment Fund"); (ii) GE Institutional Small Cap Equity Fund, a/k/a State Street Institutional Small Cap Equity Fund ("Small Cap Equity Fund"); (iii) GE Institutional International Equity Fund, a/k/a State Street Institutional International Equity Fund ("International Equity Fund"); (iv) GE RSP Income Fund, a/k/a State Street Income Fund ("Income Fund"); and (v) GE RSP U.S. Equity Fund, a/k/a State Street U.S. Core Equity Fund ("U.S. Equity Fund").

1.31    "Inactive Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is ineligible to make contributions to the account.

1.32    "Incentive Awards" means the amount of incentive or service awards awarded by the Court to Plaintiffs.

1.33    "Independent Fiduciary" means the person or entity selected by GE to serve as an independent fiduciary to the Plan with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.34    "Liaison Counsel" means Block & Leviton LLP.

- 6 -

1.35    "Named Fiduciaries" means members of the Benefit Plans Investment Committee, the GEAM Committee (a/k/a RSP Investment Committee), the Board of Trustees of the RSP U.S. Equity Fund and RSP Income Fund (a/k/a the RSP Funds Board), and the GE Pension Board.

1.36    "Net Settlement Fund" means the Settlement Amount, plus any interest or income earned on the Escrow Account, less Notice and Administration Costs, and any Attorneys' Fees and Expenses and Incentive Awards awarded by the Court, and any other Court-approved deductions.

1.37    "Non-Rollover-Electing Former Participant" means a Former Participant who has not submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court, or whose Former Participant Rollover Form is rejected by the Settlement Administrator.

1.38    "Notice" means the Notice of Settlement of Class Action, substantially in the form of notice attached as Exhibit A-1 hereto or as otherwise approved by the Court.  The Notice provided to Former Participants will include the Former Participant Rollover Form.

1.39    "Notice and Administration Costs" means expenses incurred in the administration of this Settlement Agreement, including: (a) all fees, expenses, and costs associated with the production and dissemination of the Notice to Class Members; (b) all expenses incurred by the Settlement Administrator and Plan's recordkeeper in administering and effectuating this Settlement (including taxes and tax expenses described in Section 4.5); (c) all fees and expenses associated with the Settlement Website and telephone support line described in Article III; (d) all fees charged by the Settlement Administrator; and (e) all fees and costs of the Independent Fiduciary.  Notice and Administration Costs shall be paid from the Settlement Fund.

1.40    "Parties" means Plaintiffs and Defendants.

- 7 -

4872-9241-7921.v7

1.41    "Plaintiffs" means Maria LaTorre, Robyn Berger, Brian Sullivan, Frank Magliocca, Melinda Stubblefield, Kristi Haskins, Laura Scully, Donald J. Janak, John Slatner, and Chip Knight.

1.42    "Plaintiffs' Released Claims" means any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether known or unknown (including Unknown Claims as defined herein), whether class, derivative, or individual in nature against any of the Released Parties and Defendants' Counsel:

(a)    that were asserted in the Action or Consolidated Actions (including any assertion set forth in the Complaints in each Consolidated Action, the First Amended Complaint, the Second Amended Complaint, or any other submission made by the Class Representatives, their expert witnesses, or Class Counsel in connection with the Action), or could have been asserted in the Action or Consolidated Actions, or that otherwise arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action or Consolidated Actions, whether or not pleaded in the Complaints, the First Amended Complaint, or the Second Amended Complaint, including, but not limited to, those that arise out of, relate to, are based on, or have any connection with: (1) the Class Period selection, retention, and monitoring of the Plan's investment options; (2) the Class Period performance, fees, and other characteristics of the Plan's investment options; (3) the Class Period Plan's fees and expenses, including, without limitation, fees and expenses associated with the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries; (4) the Class Period compliance with the Plan's governing documents with respect to the selection, retention, and monitoring of the Plan's investment options; (5) alleged self-dealing or prohibited transactions during the Class Period in relation to

the Plan's investment options; and (6) any alleged connection between the GE Funds and the sale of GEAM to State Street Corporation during the Class Period;

(b)  that would be barred by *res judicata* based on the Court's entry of the Final Judgment and Order of Dismissal with Prejudice;

(c)  that relate to the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

(d)  that relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought by the Independent Fiduciary alone.

(e)  Plaintiffs' Released Claims do not include: (i) claims to enforce the Settlement Agreement; (ii) claims for denial of benefits from the Plan other than as may be encompassed in subparagraph 1.42(a); and (iii) any claims not expressly released in Section 1.42.

1.43  "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Fund as described in Article V herein.

1.44  "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form attached as Exhibit A hereto.

1.45  "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.46  "Qualified Domestic Relations Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of an Active Participant, Inactive Participant, or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

- 9 -

1.47    "Released Parties" means (a) each Defendant and Dismissed Defendant; (b) each Defendant's and each Dismissed Defendant's past, present, and future parent corporation(s); (c) each Defendant's and each Dismissed Defendant's past, present, and future affiliates, subsidiaries, divisions, predecessors, successors, successors-in-interest, and assigns; (d) with respect to (a) through (c) above, all of their affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, employee benefit plan fiduciaries (with the exception of the Independent Fiduciary), service providers (including their owners and employees), consultants, subcontractors, boards of trustees, boards of directors, agents, associates, directors, employees, officers, parents, partners, managers, representatives, heirs, executors, attorneys, personal representatives, stockholders, servicers, subrogees, associates, controlling persons, counselors, insurers, co-insurers, re-insurers, financial or investment advisors, accountants, auditors, investment bankers, commercial bankers, personal representatives, and advisors of any of the foregoing, and all persons acting under, by, through, or in concert with any of them; (e) the Plan and any and all administrators, fiduciaries, parties in interest, and trustees of the Plan; and (f) any individual members of BPIC, GEAM Committee (a/k/a RSP Investment Committee), the Board of Trustees of the RSP U.S. Equity Fund and RSP Income Fund, the GE Pension Board, and/or the GE and GEAM Boards of Directors, and the spouses, members of the immediate families, representatives, and heirs of the individual members of BPIC and GEAM Committee (a/k/a RSP Investment Committee), the Board of Trustees of the RSP U.S. Equity Fund and RSP Income Fund, the GE Pension Board, and the GE or GEAM Boards of Directors, as well as any trust of which an individual member of BPIC, GEAM Committee (a/k/a RSP Investment Committee), the Board of Trustees of the RSP U.S. Equity Fund and RSP Income Fund, the GE Pension Board, and/or the GE or GEAM Boards of Directors is a settlor or which is for the benefit

- 10 -

of them and/or member(s) of their family, and each of the heirs, executors, administrators, predecessors, successors, and assigns of the foregoing.

1.48    "Rollover-Electing Former Participant" means a Former Participant who has submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court and whose Former Participant Rollover Form is accepted by the Settlement Administrator.

1.49    "Second Amended Complaint" means the document captioned Second Consolidated Amended Complaint for Liability Under the Employee Retirement Income Security Act, filed at ECF 54 on March 9, 2018 in this Action.

1.50    "Settlement" or "Settlement Agreement" means the compromise and resolution embodied in this Settlement Agreement and its exhibits.

1.51    "Settlement Administrator" means Rust Consulting, an independent contractor to be retained by Class Counsel and approved by the Court.

1.52    "Settlement Allocation Score" has the meaning ascribed to it in Section 5.1 herein.

1.53    "Settlement Amount" means the sum of Sixty-One Million U.S. Dollars (USD $61,000,000.00), contributed to the Escrow Account, as described in Article IV herein.  The payment of the Settlement Amount shall be the full and sole monetary payment to the Plaintiffs, Class Members, and Class Counsel made on behalf of Defendants in connection with this Settlement Agreement.  The Settlement Amount is not subject to any reversion to Defendants or their insurers except in the case of termination of the Settlement in which case the Settlement Amount, plus all interest and accretions thereto, and net of any expenses paid, including all expenses incurred for Notice and Administration Costs, taxes and tax expenses (incurred and

accrued), shall revert to GE, GEAM, and their respective agents or insurers *pro rata* based on their respective contributions to the Escrow Account.

1.54    "Settlement Fund" means the Settlement Amount and all interest and accretions thereto.

1.55    "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3 herein.

1.56    "Unknown Claims" means (i) any and all of Plaintiffs' Released Claims which Plaintiffs or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the release of the Released Parties, or might have affected his, her, or its decision(s) to enter into the Settlement Agreement or not to object to this Settlement Agreement; and (ii) any and all of Defendants' Released Claims which Defendants do not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiffs, Class Members, and Class Counsel, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the release of Plaintiffs, Class Member, or Class Counsel or his, her, or its decision to enter into the Settlement Agreement.  With respect to any and all of Plaintiffs' Released Claims and Defendants' Released Claims, the Parties stipulate and agree that upon the Effective Date, the Parties and Class Members shall be deemed to have waived, and by operation of the entry of the Final Approval Order shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Plaintiffs' Released Claims and Defendants' Released Claims was separately bargained for and was a material and necessary element of the Settlement.

2.      **ARTICLE II**

**SETTLEMENT APPROVAL**

2.1     <u>Preliminary Approval by Court</u>.  Plaintiffs, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order in substantially the form attached as Exhibit A hereto, which shall include, among other provisions, a request that the Court:

(a)     approve the Parties' selection of Settlement Administrator and Escrow Agent;

(b)     preliminarily approve this Settlement for purposes of disseminating notice to the Class;

(c)     approve the form and contents of the Notice (including the Former Participant Rollover Form to be sent to Former Participants) and hold that emailing, or mailing copies of the Notice to Class Members by first class mail, postage prepaid, where no email is available, complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(d)     preliminarily bar and enjoin the institution and prosecution of any Plaintiffs' Released Claims against any Defendant and the Released Parties by Plaintiffs and the Class and provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through representatives, or in any other capacity,

- 13 -

commence any action or proceeding in any court or tribunal asserting any of the Plaintiffs' Released Claims against the Defendants, the Released Parties, or the Plan;

(e)     provide that Class Members may object to the Settlement prior to the Fairness Hearing according to a designated schedule; and

(f)     schedule a Fairness Hearing for no sooner than one hundred thirty (130) calendar days after the date of the Preliminary Approval Order to (1) review comments and/or objections regarding this Settlement, and/or Class Counsel's request for an award of Attorneys' Fees and Expenses and Incentive Awards to Plaintiffs, (2) consider the fairness, reasonableness, and adequacy of this Settlement, (3) consider whether the Court should issue a Final Judgment and Order of Dismissal with Prejudice approving this Settlement, awarding any Attorneys' Fees and Expenses, and Incentive Awards; and dismissing this Action with prejudice, and (4) consider such other matters as the Court may deem appropriate.

2.2     Review by Independent Fiduciary.  GE shall select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize the settlement of Plaintiffs' Released Claims as exempt from certain prohibited transaction restrictions as set forth in PTE 2003-39 on behalf of the Plan.

(a)     The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

(b)     The Independent Fiduciary shall notify GE of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than fifty (50) calendar days before the Fairness Hearing.  GE will provide Class Counsel with a copy of the Independent Fiduciary's written notification no later than ten (10) calendar days before the deadline to move for final approval of the Settlement, for the purpose of submitting the

- 14 -

Independent Fiduciary's written notification to the Court in connection with the final approval process.

(c)      If the Independent Fiduciary disapproves or otherwise does not "authorize" (as provided under PTE 2003-39) the Settlement Agreement on behalf of the Plan, the Settlement Agreement shall terminate automatically pursuant to Section 9.2.

(d)      GE, Defendants' Counsel, and Class Counsel shall comply with reasonable requests for information made by the Independent Fiduciary.

(e)      All fees and expenses associated with the Independent Fiduciary's retention and evaluation will constitute Notice and Administration Costs to be deducted from the Settlement Fund.

2.3      <u>Final Approval by Court</u>.  No later than 35 calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Judgment and Order of Dismissal with Prejudice in substantially the form attached as Exhibit B hereto, which shall include, among other provisions, a request that the Court:

(a)      dismiss the Action with prejudice and without costs, except as provided by this Settlement Agreement;

(b)      decree that neither the Final Judgment and Order of Dismissal with Prejudice nor this Settlement Agreement constitutes an admission by any Defendant or Released Party of any liability or wrongdoing whatsoever;

(c)      bar and enjoin all Class Members from asserting any of Plaintiffs' Released Claims, on their own behalf or on behalf of the Class Members, or derivatively to secure relief for the Plan, against any of the Released Parties;

- 15 -

(d)     determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members;

(e)     that the Class Representatives and each Class Member shall release Defendants, Defendants' Counsel, the Released Parties, and the Plan from any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Settlement Amount or Net Settlement Fund and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

(f)     that all applicable CAFA requirements have been satisfied;

(g)     that the Settlement Administrator shall have final authority to determine the share of the Net Settlement Fund to be allocated to each Active Participant, each Inactive Participant, and each Former Participant pursuant to the Plan of Allocation approved by the Court; and

(h)     preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

**3.     ARTICLE III**

## SETTLEMENT ADMINISTRATION

3.1     <u>CAFA Notice</u>.  No later than ten (10) calendar days after Plaintiffs' filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with the Court, the Settlement Administrator shall provide appropriate notice of this Settlement Agreement to the Attorney General of the United States and to the Attorneys General of all states in which Class

Members reside, as specified in 28 U.S.C. §1715(b).  Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel.

    3.2   <u>Notice to Class Members</u>.

    (a)   All Notice and Administration Costs shall be paid from the Settlement Fund.

    (b)   The Company shall cause the Plan's recordkeeper (or its designee) to provide to the Settlement Administrator all information reasonably necessary to disseminate the Notice to Class Members and implement the Plan of Allocation no later than thirty (30) calendar days after the entry of the Preliminary Approval Order.

    (c)   The Settlement Administrator shall be bound by the Confidentiality Order and must safeguard participant data and use processes consistent with the U.S. Department of Labor's cybersecurity standards.  The Settlement Administrator shall use the data provided by GE and the Plan's recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.  The Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

    (d)   No later than forty-five (45) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notice by email, or by first-class mail, postage prepaid, where no email is available, to Class Members.

(e)     The Notice shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibit A-1 hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

(f)     The Notice shall be sent to the last known email or mailing address (where no email is available) of each Class Member provided by the Plan's recordkeeper (or its designee), unless an updated email or mailing address is obtained by the Settlement Administrator through its efforts to verify the last known address provided by the Plan's recordkeeper (or its designee). If any updated email or mailing address (where no email is available) is obtained by the Settlement Administrator, the Settlement Administrator shall provide the address to the Company and the Plan's recordkeeper for purposes of administration of the Plan.

(g)     The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and mail such Notices to those Class Members one additional time.

(h)     The Settlement Administrator shall post a copy of the Notice and the Former Participant Rollover Form on the Settlement Website.

3.3     <u>Settlement Website</u>.

(a)     No later than forty-five (45) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website.  The Settlement Administrator shall maintain the Settlement Website until no later than one year after the Effective Date or thirty (30) calendar days after the receipt of the notice(s) referenced in Section 5.6, whichever is earlier, at which point the Settlement Administrator shall take down the Settlement Website.

4872-9241-7921.v7

(b)     The Settlement Website shall contain a copy of the Notice, Former Participant Rollover Form, and a copy of all documents filed with the Court in connection with the Settlement.  No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing.

(c)     The Settlement Website shall also include a toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator (or its designee) directly.  The Settlement Administrator and Class Counsel, with approval from Defendants' Counsel, shall develop a question-and-answer script for use with callers to the toll-free telephone number.  The Settlement Administrator (or its designee) will also be available via the toll-free telephone number to explain how distributions to Class Members under the Settlement are calculated.

3.4     <u>Distribution of Net Settlement Fund</u>.  The Settlement Administrator shall distribute the Net Settlement Fund to Class Members in accordance with the Plan of Allocation as described in Article V herein.  Subject to at least forty (40) calendar days' written notice from the Settlement Administrator, the Company shall use reasonable efforts to cause the Plan's recordkeeper (or its designee) to provide an updated list of Active Participants and Inactive Participants prior to the distribution, so as to identify any such participants who have taken a full distribution from their Plan account and no longer have a Plan account with a balance greater than $0.00.

3.5     <u>Maintenance of Records</u>.  The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by

Plaintiffs or Defendants or their counsel relating to the administration of the Settlement Agreement.

3.6    <u>No Liability</u>.  Defendants, Defendants' Counsel, and Released Parties shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)    any act, omission, or determination of the Settlement Administrator (or its designee), including with respect to protection of participant data;

(b)    any act, omission, or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement Agreement;

(c)    the management, investment, or distribution of the Settlement Fund; or

(d)    the determination, administration, calculation, allocation, or payment of any claims asserted against the Settlement Fund.

**4.    ARTICLE IV**

**<u>ESTABLISHMENT OF THE ESCROW ACCOUNT AND SETTLEMENT FUND</u>**

4.1    <u>Establishment of the Escrow Account</u>.  No later than five (5) business days after entry of the Preliminary Approval Order, the Escrow Agent shall establish the Escrow Account. The Parties agree that the Escrow Account is intended to be, and will be, an interest-bearing "qualified settlement fund" within the meaning of U.S. Department of Treasury Regulation §1.468B-1 (26 C.F.R. §1.468B-1).  In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. §1.468B-l(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and

- 20 -

thereafter to cause the appropriate filing to occur.  Pending final distribution of the Net Settlement Fund in accordance with the Plan of Allocation, the Escrow Agent will maintain the Escrow Account.

4.2     Funding of the Escrow Account.

(a)     In consideration of all the promises and agreements set forth in the Settlement Agreement, GE, GEAM, and/or their respective insurers will contribute, or cause to be contributed, Fifteen Million, Two Hundred Fifty Thousand U.S. Dollars ($15,250,000.00), of the Settlement Amount to the Escrow Account no later than thirty (30) calendar days after the later of: (i) entry of the Preliminary Approval Order, or (ii) establishment of the Escrow Account, and the Escrow Agent shall have furnished to Defendants in writing the Escrow Account name, IRS W-9 form, and all necessary instructions for payment by wire or by check.

(b)     No later than thirty (30) calendar days prior to the Fairness Hearing, or one hundred (100) calendar days after entry of the Preliminary Approval Order, whichever is earlier, GE, GEAM, and/or their respective insurers will contribute, or cause to be contributed, the remaining portion of the Settlement Amount (Forty-Five Million, Seven Hundred Fifty Thousand U.S. Dollars ($45,750,000.00)) into the Escrow Account.

(c)     No other Defendant shall have any obligation to contribute financially to the Escrow Account.

4.3     Settlement Fund Administrator.  For the purpose of §468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. §468B) and the regulations promulgated thereunder, the administrator of the Settlement Fund shall be the Escrow Agent.  The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Amount (including

- 21 -

without limitation applying for a taxpayer identification number for the Settlement Fund and filing the returns described in 26 C.F.R. §1.468B-2(k)).  Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be deducted and paid from the Settlement Fund, as described in Section 4.5 herein.

4.4   <u>Investment of the Settlement Amount</u>.  The Escrow Agent will invest the Settlement Amount only in instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.5   <u>Taxes on the Income of the Settlement Fund</u>.  All taxes on any income of the Settlement Fund and expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) are part of the Notice and Administration Costs and shall be timely paid by the Escrow Agent out of the Settlement Fund.  The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it.  Defendants, Defendants' Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Settlement Fund.

4.6   The Escrow Agent shall not disburse the Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written

- 22 -

stipulation between Class Counsel and Defendants' Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.    **ARTICLE V**

## PLAN OF ALLOCATION

Calculation of payments to individual Class Members. Payments to each Class Member shall by calculated by the Settlement Administrator as follows, based on information provided by the Plan's recordkeeper:

5.1    For each Class Member, the Settlement Administrator shall determine a "Settlement Allocation Score." The Settlement Allocation Score shall be calculated as follows:

(a)    Each Class Member shall commence with one (1) point for every dollar held in a GE Fund at the beginning of each quarter during the Class Period.

(b)    Each Class Member's quarterly points shall then be multiplied by a Factor based on the performance of each of the GE Funds as compared to the Benchmark ("Benchmark Returns") for each quarter during the Class Period referred to as a "Fund/Quarter Factor."

(i)    The Fund/Quarter Factor shall be represented as a number representing the performance of each GE Fund subtracted from its respective Benchmark Return in each quarter.

(ii)    In any quarter in which a GE Fund outperformed relative to the Benchmark, the Fund/Quarter Factor will be negative; in any quarter in which a GE Fund underperformed relative to the Benchmark, the Fund/Quarter Factor will be positive.

(iii)    The Benchmarks shall be ETF investments with identical indices as represented by the Hewitt-Ennis-Knupp benchmarks. The Income Fund, with benchmark

- 23 -

Bloomberg US Aggregate Bond, will use the iShares Core US Aggregate ETF with ticker AGG. The U.S. Equity Fund, with benchmark S&P 500, will use the iShares Core S&P 500 ETF with ticker IVV. The International Equity Fund, with benchmark MSCI EAFE, will use the iShares MSCI EAFE ETF with ticker EFA. The Benchmark for the Strategic Investment Fund will be a blend of the three ETF's defined above, specifically 35% IVV, 25% EFA and 40% AGG.

(iv)    For the Small Cap Equity Fund, the Benchmark Return will be assumed to be 0.00 and the corresponding quarterly return of the fund will be assumed to be the negative of one-fourth of the prevailing annual expense ratio times 0.31. The additional factor of 0.31 reflects the percent of the expense ratio earned by GE and excludes the sub-advisory component of the total management fee.

(v)    The quarterly returns of the Benchmarks and the GE Funds that will be used to calculate the Fund/Quarter Factors are listed in Table A.

(vi)    Each Fund/Quarter Factor is calculated as the Benchmark Return minus the Subject Fund return and are listed in Table B.

(c)    For each quarter, the Settlement Administrator shall calculate a Class Member's quarterly points as follows.

(i)    The Settlement Administrator shall determine the Points the Class Member receives for each GE Fund. To do so, the Settlement Administrator shall multiply the amount the Class Member held in each GE Fund by the Factor applicable to that GE Fund in that quarter. This determines the points the Class Member receives for that GE Fund in that quarter.

(ii)    The Settlement Administrator shall then add up the Points the Class Member earned for each GE Fund in that quarter. The sum is the total points the Class Member receives for that quarter.

- 24 -

(d)    The Settlement Administrator will then add up the total number of Points the Class Member received in each quarter the Class Member held any GE Fund.  The larger of this sum and zero is the Class Member's Settlement Allocation Score.

(e)    The Settlement Administrator shall calculate each Class Member's Settlement Allocation Score according to the above-described process.

5.2    The Settlement Administrator shall determine each Class Member's share of the Net Settlement Fund based on his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores.  Each Class Member's share of the Net Settlement Fund shall be referred to as the "Entitlement Amount."

| Table A | | | | | |
|---|---|---|---|---|---|
| | INCOME FUND | US EQTY FUND | INT'L FUND | STRATEGIC FUND | SMALL CAP |
| 3/31/12 | 1.4502 | 14.5545 | 12.4068 | 8.6241 | (0.0690) |
| 6/30/12 | 2.1335 | (4.8425) | (6.0413) | (2.1500) | (0.0690) |
| 9/30/12 | 1.9151 | 7.1723 | 7.2261 | 4.7628 | (0.0690) |
| 12/31/12 | 0.2601 | (0.0415) | 6.6556 | 1.3417 | (0.0690) |
| 3/31/13 | 0.0081 | 11.1435 | 2.8699 | 5.0786 | (0.0705) |
| 6/30/13 | (2.3514) | 4.1509 | 0.4391 | 0.3249 | (0.0705) |
| 9/30/13 | 0.9747 | 6.8023 | 10.3326 | 5.1445 | (0.0705) |
| 12/31/13 | 0.5330 | 9.3202 | 6.7221 | 5.3556 | (0.0705) |
| 3/31/14 | 2.1099 | 2.4133 | (2.0178) | 0.9156 | (0.0682) |
| 6/30/14 | 2.0222 | 4.9455 | 1.6020 | 3.2571 | (0.0682) |
| 9/30/14 | (0.0066) | 1.3957 | (4.2877) | (0.7390) | (0.0682) |
| 12/31/14 | 1.5959 | 3.9425 | (3.1094) | 1.3943 | (0.0682) |
| 3/31/15 | 1.8648 | 0.7962 | 7.3371 | 2.4259 | (0.0690) |
| 6/30/15 | (1.8112) | 0.4986 | 1.0081 | (0.0685) | (0.0690) |
| 9/30/15 | 0.5596 | (8.5019) | (12.2280) | (6.0101) | (0.0690) |
| 12/31/15 | (0.2342) | 5.6917 | 4.6055 | 2.7219 | (0.0690) |
| 3/31/16 | 2.7713 | (0.9932) | (3.9112) | 0.2639 | (0.0690) |
| 6/30/16 | 2.4405 | 2.2908 | (1.2381) | 1.5713 | (0.0690) |

| Table A | | | | | |
|---|---|---|---|---|---|
| | INCOME FUND | US EQTY FUND | INT'L FUND | STRATEGIC FUND | SMALL CAP |
| | AGG | IVV | EFA | Custom Blend | Fee |
| 3/31/12 | 0.2400 | 12.5500 | 10.7600 | 7.1785 | - |
| 6/30/12 | 2.0300 | (2.7600) | (7.0400) | (1.9140) | - |
| 9/30/12 | 1.5200 | 6.3200 | 6.9000 | 4.5450 | - |
| 12/31/12 | 0.2000 | (0.3800) | 6.5100 | 1.5745 | - |
| 3/31/13 | (0.1100) | 10.5900 | 5.1100 | 4.9400 | - |
| 6/30/13 | (2.4200) | 2.9000 | (0.9300) | (0.1855) | - |
| 9/30/13 | 0.5600 | 5.2300 | 11.4900 | 4.9270 | - |
| 12/31/13 | (0.1800) | 10.4900 | 5.6200 | 5.0045 | - |
| 3/31/14 | 1.8700 | 1.8000 | 0.6100 | 1.5305 | - |
| 6/30/14 | 2.0600 | 5.2100 | 4.1100 | 3.6750 | - |
| 9/30/14 | 0.1700 | 1.1200 | (5.9300) | (1.0225) | - |
| 12/31/14 | 1.8200 | 4.9200 | (3.6300) | 1.5425 | - |
| 3/31/15 | 1.6300 | 0.9400 | 4.8500 | 2.1935 | - |
| 6/30/15 | (1.7200) | 0.2600 | 0.6300 | (0.4395) | - |
| 9/30/15 | 1.2200 | (6.4400) | (10.2300) | (4.3235) | - |
| 12/31/15 | (0.6100) | 7.0300 | 4.6200 | 3.3715 | - |
| 3/31/16 | 3.0200 | 1.3400 | (2.9900) | 0.9295 | - |
| 6/30/16 | 2.2100 | 2.4400 | (1.4000) | 1.3880 | - |

| Table B | | | | | |
|---|---|---|---|---|---|
| Difference: | INCOME FUND | US EQTY FUND | INT'L FUND | STRATEGIC FUND | SMALL CAP |
| 3/31/12 | (1.2102) | (2.0045) | (1.6468) | (1.4456) | 0.0690 |
| 6/30/12 | (0.1035) | 2.0825 | (0.9987) | 0.2360 | 0.0690 |
| 9/30/12 | (0.3951) | (0.8523) | (0.3261) | (0.2178) | 0.0690 |
| 12/31/12 | (0.0601) | (0.3385) | (0.1456) | 0.2328 | 0.0690 |
| 3/31/13 | (0.1181) | (0.5535) | 2.2401 | (0.1386) | 0.0705 |
| 6/30/13 | (0.0686) | (1.2509) | (1.3691) | (0.5104) | 0.0705 |
| 9/30/13 | (0.4147) | (1.5723) | 1.1574 | (0.2175) | 0.0705 |
| 12/31/13 | (0.7130) | 1.1698 | (1.1021) | (0.3511) | 0.0705 |
| 3/31/14 | (0.2399) | (0.6133) | 2.6278 | 0.6149 | 0.0682 |
| 6/30/14 | 0.0378 | 0.2645 | 2.5080 | 0.4179 | 0.0682 |
| 9/30/14 | 0.1766 | (0.2757) | (1.6423) | (0.2835) | 0.0682 |
| 12/31/14 | 0.2241 | 0.9775 | (0.5206) | 0.1482 | 0.0682 |
| 3/31/15 | (0.2348) | 0.1438 | (2.4871) | (0.2324) | 0.0690 |

| Table B | | | | | |
|---|---|---|---|---|---|
| Difference: | INCOME FUND | US EQTY FUND | INT'L FUND | STRATEGIC FUND | SMALL CAP |
| 6/30/15 | 0.0912 | (0.2386) | (0.3781) | (0.3710) | 0.0690 |
| 9/30/15 | 0.6604 | 2.0619 | 1.9980 | 1.6866 | 0.0690 |
| 12/31/15 | (0.3758) | 1.3383 | 0.0145 | 0.6496 | 0.0690 |
| 3/31/16 | 0.2487 | 2.3332 | 0.9212 | 0.6656 | 0.0690 |
| 6/30/16 | (0.2305) | 0.1492 | (0.1619) | (0.1833) | 0.0690 |

    5.3    <u>Payments to Class Members Who Are Active Participants and Inactive Participants</u>.

        (a)    Upon completing the calculation of each Class Member's Entitlement Amount and no later than thirty (30) calendar days following the Effective Date, the Settlement Administrator shall provide the Company (or its designee), Class Counsel, and the Plan's recordkeeper information in a mutually agreeable format concerning each Active Participant and each Inactive Participant's Entitlement Amount, and any other information requested by the Company or the Plan's recordkeeper as necessary to effectuate this Article.

        (b)    No later than ten (10) calendar days after completing the steps described in Section 5.3(a) herein and upon written notice to the Company and the Plan's recordkeeper, the Settlement Administrator shall effect a transfer from the Settlement Fund to the Plan of all monetary payments payable to Active Participants and Inactive Participants.  The Plan's recordkeeper shall thereafter within a reasonable time credit the individual Plan account of each Active Participant and Inactive Participant in an amount equal to that individual's Entitlement Amount.  The monetary payments shall be credited to the existing pre-tax capital preservation vehicle within the Plan and any interest earned on the funds in that capital preservation vehicle between the date of transfer to the Plan's recordkeeper from the Settlement Administrator and the transfer of each Active Participant's and each Inactive Participant's Entitlement Amounts to their accounts shall be credited to those Active and Inactive Participants' accounts on a *pro rata* basis.

- 27 -

(c)     Each Active Participant and each Inactive Participant's Entitlement Amount shall be invested in accordance with and in proportion to such Active Participant's and Inactive Participant's investment elections then on file for new contributions to his or her Plan account.  If the Active Participant or Inactive Participant does not have an investment election on file, then such individual shall be deemed to have directed payment of his or her Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. §2550.404c-5.  Each Active Participant and each Inactive Participant shall be deemed 100% vested in their Entitlement Amount.

(d)     If, as of the date on which the Plan's recordkeeper credits the individual Plan account of each Active Participant and Inactive Participant with his or her Entitlement Amount, an individual believed to be an Active Participant or an Inactive Participant no longer has a Plan account balance greater than $0.00, he or she will be treated as a Former Participant.  The Plan's recordkeeper shall promptly transmit a list of such individuals to the Settlement Administrator, along with the Entitlement Amounts for such individuals, who shall effectuate payment to such individuals in accordance with Section 5.4 herein.

5.4     <u>Payments to Former Participants</u>.  Each Former Participant (or the Beneficiaries or Alternate Payees of Former Participants) will have the opportunity to elect a tax-qualified rollover of his or her Entitlement Amount to an individual retirement account or other eligible employment plan, which he or she has identified on the Former Participant Rollover Form, provided that the Former Participant supplies adequate information to the Settlement Administrator (as requested on the form) to effect the rollover.  Payments to each Former Participant shall depend on whether each is a Rollover-Electing Former Participant or a Non-Rollover-Electing Former Participant:

- 28 -

(a)      Rollover-Electing Former Participants.  Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall effect a rollover from the Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Former Participant in his or her Former Participant Rollover Form (if the conditions for such rollover are satisfied, as described on the form) and any associated paperwork necessary to transfer such Entitlement Amount by rollover (as requested on the form) is received by the Settlement Administrator.  If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Former Participant as provided in his or her Former Participant Rollover Form, he or she will be treated as a Non-Rollover-Electing Former Participant.

(b)      Non-Rollover-Electing Former Participants.  Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall issue a check from the Settlement Fund to each Non-Rollover-Electing Former Participant, in the amount of each Former Participant's Entitlement Amount (less any withholdings), as long as the Entitlement Amount exceeds $5.00.

5.5    Payments to Beneficiaries and Alternate Payees.

(a)      Beneficiaries of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Amounts under this Article shall receive such settlement payments in the form of a check issued by the Settlement Administrator.  Beneficiaries of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Amounts under this Article will receive such

- 29 -

settlement payments under the methods described in Section 5.4 for Former Participants, as permitted by ERISA and the terms of the Plan.

(b)    Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Amounts under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order.  Alternate Payees of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Amounts under this Article will receive such settlement payments under the methods described in Section 5.4 for Former Participants.

(c)    The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

(d)    All checks issued in accordance with the Plan of Allocation shall be mailed to the address of each Class Member (or his or her Beneficiary or Alternate Payee) provided by the Plan's recordkeeper or any updated address obtained by the Settlement Administrator.

5.6    Notice of Completion of Plan of Allocation.  Within ten (10) business days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall provide written notice of its implementation to Class Counsel and Defendants' Counsel.  Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan of Allocation.

5.7    Disbursement of Undistributed Monies from the Settlement Fund.  All checks issued pursuant to this Plan of Allocation shall expire one hundred twenty (120) calendar days after their issue date.  All checks that are undelivered or are not cashed before their expiration date shall revert to the Settlement Fund and the Class Member on whose behalf such check had been

made shall be deemed to have waived his or her entitlement to such payment.  If for any reason, there is a portion of the Settlement Fund remaining after all distributions have been made, including Notice and Administration Costs, taxes and tax expenses, Attorneys' Fees and Expenses and any Incentive Awards to the Plaintiffs, such funds shall be donated to Massachusetts Legal Assistance Corporation.

5.8     Responsibility for Taxes.  Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person. Defendants, Defendants' Counsel, Released Parties, Class Counsel, and the Settlement Administrator shall have no responsibility for or liability from: (a) any tax liability, including, without limitation, penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

5.9     Restorative Payments.  The Net Settlement Fund to be allocated and distributed to the Former Participants and to the Plan for distribution to Active and Inactive Participants in accordance with the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

6.     **ARTICLE VI**

**ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' INCENTIVE AWARDS**

6.1     Attorneys' Fees and Expenses.  Class Counsel may submit an application for an award from the Settlement Fund for their reasonable Attorneys' Fees and Expenses, and any interest on such Attorneys' Fees and Expenses at the same rate and for the same periods as earned

- 31 -

on the Settlement Fund.  For the avoidance of doubt, by including this provision, Defendants take

no position on the award of any Attorneys' Fees and Expenses, including any interest thereon,

requested by Class Counsel.  The award of Attorneys' Fees and Expenses shall be paid to Class

Counsel from the Settlement Fund immediately upon the Court's execution of an order awarding

such Attorneys' Fees and Expenses, notwithstanding the existence of any objection thereto or

appeal therefrom.  The Court's failure to approve in part any application for Attorneys' Fees and

Expenses sought by Class Counsel shall not prevent the Settlement Agreement from becoming

effective, nor shall it be grounds for termination of the Settlement.

      6.2     In the event that the Effective Date does not occur, or the Final Judgment and Order

of Dismissal with Prejudice or the order making the Attorneys' Fees and Expenses award is

reversed or modified, or this Settlement Agreement is canceled or terminated for any other reason,

and such reversal, modification, cancellation or termination becomes final and not subject to

review, and in the event that the fee and expense award has been paid to any extent, then Class

Counsel, including their respective partners and/or shareholders, and Class Representatives who

have received any portion of the Attorneys' Fees and Expenses award shall, within ten (10)

business days from receiving notice from Defendants' Counsel or from a court of appropriate

jurisdiction, refund to the Net Settlement Fund all such Attorneys' Fees and Expenses previously

paid to them from the Net Settlement Fund plus the interest earned thereon in an amount consistent

with such reversal, modification, cancellation or termination.  Any refunds required pursuant to

Section 6.2 shall be the several obligation of Class Counsel, including their law firms, partners,

and/or shareholders, and Class Representatives that received Attorneys' Fees and Expenses to

make appropriate refunds or repayments to the Net Settlement Fund.  Each such Class Counsel or

Class Representatives receiving Attorneys' Fees and Expenses, as a condition of receiving such

Attorneys' Fees and Expenses, on behalf of itself and each partner and/or shareholder of it, agrees that (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and (b) are severally liable for the full amount of all Attorneys' Fees and Expenses paid from the Net Settlement Fund.

6.3     <u>Incentive Awards</u>.   Class Counsel may file an application with the Court for payment of Incentive Awards to Plaintiffs.  For the avoidance of doubt, by including this provision, Defendants take no position on any Incentive Awards requested by Class Counsel.   Incentive Awards shall be paid from the Settlement Fund upon the Effective Date.  The Court's failure to approve in part any application for Incentive Awards sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

7.     **ARTICLE VII**

**<u>RELEASES AND COVENANT NOT TO SUE</u>**

7.1     <u>Releases</u>.   Subject to Article X herein, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims.

(a)     Upon the Effective Date, Plaintiffs and every Class Member on behalf of themselves, their heirs, executors, administrators, successors, and assigns, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) shall, with respect to each and every Plaintiffs' Released Claims, be deemed to fully, finally and forever release, relinquish and forever discharge each and every Plaintiffs' Released Claims (including Unknown Claims), whether arising before or after the Final Judgment and Order of Dismissal with Prejudice, against

- 33 -

any and all of Defendants and the Released Parties, and forever shall be enjoined from prosecuting any such Plaintiffs' Released Claims.

(b)     Upon the Effective Date, Defendants and the Released Parties, on behalf of themselves and their successors and assigns shall be deemed to fully, finally and forever release, relinquish and forever discharge each and every Defendants' Released Claims (including Unknown Claims), as to Plaintiffs, the Class and their attorneys (including Class Counsel), and forever shall be enjoined from prosecuting any such claims.

(c)     Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.2     <u>Covenant Not To Sue</u>.  Upon the Effective Date, Plaintiffs and the Class acting individually or together, or in combination with others, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, IRS determination letter proceeding, Department of Labor proceeding, administrative forum or other forum of any kind, asserting any of the Plaintiffs' Released Claims against Defendant and any of the Released Parties.

**8.     ARTICLE VIII**

**<u>REPRESENTATIONS AND WARRANTIES</u>**

8.1     <u>Parties' Representations and Warranties</u>.  The Parties represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into the Settlement Agreement:

(a)     that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations

4872-9241-7921.v7

of counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

(b)     that they assume the risk of mistake as to facts or law;

(c)     that they recognize that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

(d)     that they have carefully read the contents of the Settlement Agreement, they have consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that Party by his, her, or its counsel; and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each Party;

(e)     that they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary; and

(f)     that at all relevant times the Parties and their respective counsel have complied with Rule 11 of the Federal Rules of Civil Procedure.

8.2     <u>Signatories' Representations and Warranties</u>.  The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

4872-9241-7921.v7

9.    **ARTICLE IX**

<u>**TERMINATION**</u>

9.1    Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after:

(a)    the Court declines to approve the Settlement Agreement or any material part of it;

(b)    the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order;

(c)    the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

(d)    the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Expenses or any Incentive Awards to Plaintiffs shall constitute grounds for termination of the Settlement Agreement.

9.2    <u>Automatic Termination</u>.  The Settlement Agreement will automatically terminate if (1) either the Independent Fiduciary does not approve the releases or the Settlement Agreement, or disapproves any provision of the releases or the Settlement Agreement for any reason whatsoever, or GE reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by PTE 2003-39; and (2) the Parties do not mutually agree to

modify the terms of the Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39.

9.3     Reversion to Prior Positions.    If the Settlement Agreement is terminated in accordance with this Article, then (a) the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, (b) the Settlement Amount, plus all interest and accretions thereto, and net of any expenses paid, including all expenses incurred for Notice and Administration Costs, taxes and tax expenses (incurred and accrued), shall revert to GE, GEAM, and their respective agents or insurers based on their respective contributions to the Escrow Account, (c) this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, (d) any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, (e) the fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and (f) the Parties expressly and affirmatively reserve all claims, remedies, defenses, arguments, and motions as to all claims and requests for relief that might have been or might be later asserted in the Action.

10.     **ARTICLE X**

**NO ADMISSION OF WRONGDOING**

10.1     The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and Defendants and the Released Parties deny any and all wrongdoing.   Defendants and the Released Parties deny all liability to the Plaintiffs and Class Members, deny all of the claims made in the Action and Consolidated Actions, deny all allegations of wrongdoing made in any of the complaints in this

Action and the Consolidated Actions, and deny that the Plaintiffs, the Class Members, the Plan, or any of the Plan's current or former participants suffered any losses. Defendants and the Released Parties further maintain that they acted prudently and loyally at all times when acting in any fiduciary capacity with respect to the Plan. This Settlement Agreement, and the discussions between the Parties preceding it, shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' or the Released Parties' part of any fault or liability whatsoever.

10.2    The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

(a)    shall not be offered or received against Defendants or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants or a Released Party of the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of Defendants or any of the Released Parties, or the appropriateness of certifying a non-settlement class;

(b)    shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendants or any of the Released Parties;

- 38 -

(c)      shall not be offered or received against Defendants or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants or any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, Defendants or the Released Parties may refer to it to effectuate the liability protection granted them hereunder; and

(d)      shall not be construed against Defendants or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

11.      **ARTICLE XI**

**MISCELLANEOUS**

11.1      <u>Exhibits Included</u>.  The exhibits to the Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

11.2      <u>Cooperation</u>.  Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

11.3      <u>Compliance with Confidentiality Order.</u>  Within sixty (60) calendar days after the Effective Date, the Parties shall either (a) return to the producing parties, or (b) destroy, all documents, communications, or things produced in discovery under a claim of confidentiality pursuant to the Confidentiality Order, including, but not limited to, documents, communications, or things produced under a claim of privilege.  Each Party shall serve a written notice to each producing party certifying that the Party has carried out the obligations imposed by this Section

- 39 -

11.3.  The Parties, Class Counsel, and Defendants' Counsel agree that at all times they will honor the requirements of the Confidentiality Order, notwithstanding the settlement of the Action.

11.4   <u>Non-Disparagement</u>.

(a)    While maintaining their position that the claims asserted in the Action are meritorious, Class Counsel shall not make any public statement or statements (whether or not for attribution) that disparage the business, conduct, or reputation of any Defendants, Released Parties, or Defendants' Counsel, that characterize the discovery record in the Action as it relates to Defendants' oversight of the Plan, or characterize the discovery record in the Action more generally in a way that suggests Plaintiffs would have prevailed at trial.  While maintaining their position that the claims asserted in the Action are not meritorious, Defendants and Defendants' Counsel shall not make any public statement or statements (whether or not for attribution) that disparage the business, conduct, or reputation of Plaintiffs or Class Counsel relating to the Action. Nothing in this paragraph shall prevent Class Counsel, Defendants, or Defendants' Counsel from discussing public information about the Action, including the claims alleged, the legal arguments made by the parties, or the terms or benefits of the Settlement.  If a party or counsel is found to be in violation of this Section 11.4, that party or counsel shall be individually responsible for such breach and there shall not be joint and several liability among counsel or the parties.

(b)    Plaintiffs agree that they will not make any disparaging statements about the Defendants, Released Parties, or Defendants' Counsel that are (a) known to be false or are deliberate or reckless falsehoods, (b) misleading, defamatory or otherwise unlawful, (c) attacks upon Defendants, the Released Parties, or Defendants' Counsel in a manner reasonably calculated to harm their reputation and reduce their income, or (d) false or misleading and deliberately inflict on Defendants, the Released Parties, or Defendants' Counsel economic harm unnecessary to

- 40 -

legitimate concerted activities.  This paragraph does not prevent Plaintiffs from engaging in any speech or conduct that is protected by the National Labor Relations Act.

11.5    Entire Agreement.  This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter and supersede any prior agreement, whether written or oral, as to that subject matter.   No representations or inducements have been made by or to any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents.  The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

11.6    Waiver.  The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

11.7    Construction of Agreement.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

11.8    Headings.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.9    Governing Law.  The Settlement Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Massachusetts without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern,

and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

11.10   <u>Fees and Expenses</u>.  Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors.  Nothing in the Settlement Agreement shall require Defendants to pay any monies other than as expressly provided herein.

11.11   <u>Execution in Counterparts</u>.  The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile signature.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

11.12   <u>Notices</u>.   Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail, postage prepaid, or delivered by reputable express overnight courier as follows:

> (a)   if to Plaintiffs:
>
> Evan J. Kaufman
> Robbins Geller Rudman & Dowd LLP
> 58 South Service Road, Suite 200
> Melville, NY 11747

Lee Squitieri
Squitieri & Fearon, LLP
305 Broadway, 7th Floor
New York, NY  10007

Orin Kurtz
Gardy & Notis, LLP
150 East 52nd Street, 11th Floor
New York, NY  10022

Charles H. Field
Sanford Heisler Sharp, LLP
2550 Fifth Avenue, Suite 3100
San Diego, CA  92103

(b)   if to Defendants:

James O. Fleckner
Alison V. Douglass
Katherine G. McKenney
Goodwin Procter LLP
100 Northern Avenue
Boston, MA  02210

11.13   <u>Retention of Jurisdiction</u>.  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement and enforce the Confidentiality Order.

IN WITNESS WHEREOF, the Parties have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

- 43 -

DATED:  September 29, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice*)
EVAN J. KAUFMAN (*pro hac vice*)
MAGDALENE ECONOMOU (*pro hac vice*)

_____
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
meconomou@rgrdlaw.com

SQUITIERI & FEARON, LLP
LEE SQUITIERI (*pro hac vice*)

_____
LEE SQUITIERI

305 Broadway, 7th Floor
New York, NY  10007
Telephone:  212/421-6492
212/421-6553 (fax)
lee@sfclasslaw.com

GARDY & NOTIS, LLP
MARK C. GARDY
ORIN KURTZ (*pro hac vice*)
MEAGAN A. FARMER (*pro hac vice*)

_____
ORIN KURTZ

- 44 -

DATED:  September 29, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (*pro hac vice*)
EVAN J. KAUFMAN (*pro hac vice*)
MAGDALENE ECONOMOU (*pro hac vice*)

_____
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
meconomou@rgrdlaw.com

SQUITIERI & FEARON, LLP
LEE SQUITIERI (*pro hac vice*)

_____
LEE SQUITIERI

305 Broadway, 7th Floor
New York, NY  10007
Telephone:  212/421-6492
212/421-6553 (fax)
lee@sfclasslaw.com

GARDY & NOTIS, LLP
MARK C. GARDY
ORIN KURTZ (*pro hac vice*)
MEAGAN A. FARMER (*pro hac vice*)

_____
ORIN KURTZ

- 44 -

4872-9241-7921.v7

Telephone: 212/905-0509
212/905-0508 (fax)
mgardy@gardylaw.com
okurtz@gardylaw.com
mfarmer@gardylaw.com

SANFORD HEISLER SHARP, LLP
CHARLES H. FIELD (*pro hac vice*)

CHARLES H. FIELD

2550 Fifth Avenue, Suite 3100
San Diego, CA  92103
Telephone:  619/577-4251
619/577-4250 (fax)
cfield@sanfordheisler.com

*Counsel for Plaintiffs and the Class*

BLOCK & LEVITON LLP
JASON M. LEVITON (BBO #678331)
260 Franklin Street, Suite 1860
Boston, MA  02110
Telephone:  617/398-5600
617/507-6020 (fax)
jason@blockesq.com

*Liaison Counsel for Plaintiffs*

GOODWIN PROCTER LLP
JAMES O. FLECKNER
ALISON V. DOUGLASS
KATHERINE G. McKENNEY

JAMES O. FLECKNER

4872-9241-7921.v7

150 East 52nd Street, 11th Floor
New York, NY  10022
Telephone:  212/905-0509
212/905-0508 (fax)
mgardy@gardylaw.com
okurtz@gardylaw.com
mfarmer@gardylaw.com

SANFORD HEISLER SHARP, LLP
CHARLES H. FIELD (*pro hac vice*)

_____

CHARLES H. FIELD

2550 Fifth Avenue, Suite 3100
San Diego, CA  92103
Telephone:  619/577-4251
619/577-4250 (fax)
cfield@sanfordheisler.com

*Counsel for Plaintiffs and the Class*

BLOCK & LEVITON LLP
JASON M. LEVITON (BBO #678331)
260 Franklin Street, Suite 1860
Boston, MA  02110
Telephone:  617/398-5600
617/507-6020 (fax)
jason@blockesq.com

*Liaison Counsel for Plaintiffs*

GOODWIN PROCTER LLP
JAMES O. FLECKNER
ALISON V. DOUGLASS
KATHERINE G. McKENNEY

DocuSigned by:

*James O. Fleckner*

7C984F63E4AB4C5...

_____

JAMES O. FLECKNER

- 45 -

100 Northern Avenue
Boston, MA  02210
Telephone: (617) 570-1000
(617) 523-1231 (fax)
jfleckner@goodwinlaw.com
adouglass@goodwinlaw.com
kmckenney@goodwinlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Theodore J. Pintar, hereby certify that on October 6, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


                                                    _____
                                                    */s/ Theodore J. Pintar*
                                                    THEODORE J. PINTAR